In the Matter of CONSOLIDATED EDISON CO. OF NEW YORK, Respondent, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Appellant.

CONSOLIDATED EDISON CO. OF NEW YORK, Respondent, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Appellant.

In the Matter of CENTRAL HUDSON GAS & ELECTRIC CORP., Respondent-Appellant, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Appellant-Respondent.

Third Department, July 27, 1978

## APPEARANCES OF COUNSEL

*Peter H. Schiff (Howard J. Read* of counsel), for Public Service Commission, appellant and appellant-respondent.

*Joseph D. Block* for Consolidated Edison Co. of New York, Inc., respondent.

*Gould & Wilkie (Davison W. Grant* and *Thomas C. Hutton* of counsel), for Central Hudson Gas & Electric Corporation, respondent-appellant.

*LeBoeuf, Lamb, Leiby & MacRae (Ronald D. Jones, Andrew*

*Gansberg* and *Howard S. Ockman* of counsel), for National Fuel Gas Distribution Corp. and others, *amici curiae.*

*Harvey J. Shulman* for Scientists' Institute for Public Information and others, *amici curiae.*

### OPINION OF THE COURT

GREENBLOTT, J.

We are here concerned with two separate appeals but because of the similarity of issues we are considering them together.

■ The first appeal concerns an order of the Public Service Commission (PSC) issued on February 25, 1977 which provided, in pertinent part, that "[a]ll utilities subject to the jurisdiction of this Commission shall discontinue the practice of utilizing material inserted in bills rendered to customers as a mechanism for the dissemination of the utility's position on controversial matters of public policy". Petitioner, Consolidated Edison Company of New York, Inc. (Con Edison), challenged the validity of that portion of the order and Special Term annulled the order to the extent that it prohibited Con Edison from utilizing bill inserts as a means of disseminating its views or controversial matters of public policy. Special Term concluded that there was no basis in the statutory powers accorded the PSC which would authorize the total ban of such inserts. We disagree.

The PSC has general powers of supervision and regulation over activities of gas and electric utilities. (See, e.g., Public Service Law, § 66.) The issue before us is whether, given these powers, the PSC may prevent management from expressing its political positions in a manner that is inevitably subsidized by the consumer, particularly when the PSC places no restrictions on advertisement by any other means. We hold that it may.

Con Edison does not dispute that the PSC has a duty to allocate costs for political advertising to accounts chargeable to shareholders (16 NYCRR ch 3, subch F, account 426.4). An obvious corollary of this duty is the requirement that consumers not be charged with the costs of these political activities. The PSC necessarily has the duty to protect consumers from such charges.

The PSC protests that, given the manner of airing its views chosen by Con Edison, it cannot fulfill that duty. We agree

that it would be impossible to separate out the costs attributable to mailing the bills (a customer expense) from the costs attributable to mailing out management statements (a shareholder expense). Unless the PSC allocates all the costs of mailing as well as costs of stuffing the envelopes to the utility, management will benefit from a savings in postage and labor, a subsidy the PSC is empowered to prevent. That the mailings would not cost the consumers anything is irrelevant since the issue is whether management's costs will be reduced through customer subsidy. In the battle of ideas, the utilities are not entitled to require the consumers to help defray their expenses.

█ We also reject the argument that the order is a violation of the utilities' free speech rights. Since the PSC's authority to issue the order and the necessity for doing so have been established, it is only a serious infringement of petitioner's constitutional rights that would warrant our annulment of the order. Here, there is no order barring Con Edison from expressing its opinions, nor is there an order barring the company from using the usual forms of advertisement. There is merely an order prohibiting the use of bill inserts to put forth management positions. This insignificant impingement on petitioner's rights is far outweighed by the PSC's duty to prevent customer subsidy of management's pamphleteering.

█ Nor do we view the order as being fatally vague. The order restricts only the utility's use of the bill insert to express its "position on controversial matters of public policy". The boundaries of the order need not be defined with utmost exactitude. We have little doubt that the PSC and the utilities are capable of distinguishing useful information for consumers (e.g., ways to conserve energy) from management's statement on the political issues of the day (e.g., benefits of nuclear energy). Further the order clearly contemplates expenditures that would qualify under account 426.4 of the PSC's accounting guidelines (16 NYCRR ch 3, subch F) as expenditures to influence public opinion. This is as detailed a statement of the contours of the order as the Constitution requires. Thus, the judgment entered March 6, 1978 must be reversed.

█ In the second appeal petitioner Central Hudson Gas & Electric Corp. (Central Hudson) cross-appeals from a judgment of Special Term insofar as the court dismissed its application to vacate that part of the order of the PSC issued on February

25, 1977 which classified expenses for advertising designed to sway public opinion as nonoperational and, therefore, chargeable to shareholders and which prohibited promotional advertising by electric utilities. For the reasons hereinbefore mentioned so much of the judgment as annulled that portion of the PSC order banning the use of bill inserts as a means of disseminating the utility's position on controversial matters of public policy should be reversed.

■ Concerning the prohibition of promotional advertising Central Hudson initially argues that no statutory authority empowers the PSC to order such a prohibition. The PSC relies on its statutory obligation to assure that rates charged are just and reasonable (Public Service Law, § 66) and upon subdivision 2 of section 5 of the Public Service Law which required the PSC to encourage corporations subject to its jurisdiction "to formulate and carry out long-range programs, individually or cooperatively, for the performance of their public service responsibilities with economy, efficiency, and care for the public safety, the preservation of the environmental values and the conservation of natural resources." In justification, the PSC concluded that promotional advertising will increase the use of electricity causing spiraling price increases due to the fact that present rates do not cover the marginal cost of new capacity; that such advertising provides misleading signals that energy conservation is unnecessary; and that additional usage will increase the level of dependence on foreign sources of fuel oil. Considering the impact of promotional advertisement, the PSC is, in our view, statutorily empowered to prohibit such advertisement (Public Service Law, §§ 66, 5, subd 2).

■ Central Hudson also argues that the prohibition violates its right to free speech as guaranteed by the First Amendment to the United States Constitution. The Supreme Court has held that commercial speech falls within the protection of the First Amendment (*Virginia Pharmacy B. v Virginia Consumer Council,* 425 US 748). More recently, in a case where a prohibition was directed at speech itself, the Supreme Court held that the prohibition must be supported by a showing of a subordinating interest which is compelling and the burden is on the government to show such an interest (*First Nat. Bank of Boston v Bellotti,* 435 US 765). Upon our review of the record, it is the opinion of this court that the PSC has sufficiently demonstrated such an interest and, therefore, the

prohibition of promotional advertising is not violative of Central Hudson's First Amendment right to freedom of speech.

■ Expenditures for political and related advertising activities have normally been excluded from operational expenses in the rate-making process and consequently have been chargeable to shareholders rather than ratepayers (16 NYCRR ch 3, subch F, account 426.4). Central Hudson, however, argues against the expansion by the PSC of the definition of political and related advertising activities to include "all advertising which seeks to sway opinion—legislative, environmental, governmental, consumer or any other kind—to the industry's position on public policy disputes". Specifically included in this category by the PSC were expenses incurred in advertisements designed to influence public opinion concerning the development of nuclear energy. We agree with Special Term that the PSC may properly classify such expenditures pursuant to its rate regulating activities and that the expanded definition propounded by the PSC is not overly broad, arbitrary or capricious (see *Southwestern Elec. Power Co. v Federal Power Comm.,* 304 F2d 29, cert den *sub nom. Alabama Power Co. v Federal Power Comm.,* 371 US 924). We also find no constitutional infirmity in such categorization.

The judgment entered March 6, 1978 should be reversed, on the law, without costs, and the order declared constitutional.

The judgment entered March 14, 1978 should be modified, on the law, by deleting so much thereof as annulled the PSC's directive; determination confirmed, and, as so modified, affirmed, without costs.

SWEENEY, J. (concurring in part and dissenting in part). We respectfully dissent from that part of the majority's decision that holds that the Public Service Commission (PSC) is authorized to restrict political inserts in billing envelopes.

The PSC has only those powers conferred upon it by the Legislature and such additional powers as are incidental thereto or necessarily implied therefrom *(Matter of New York Tel. Co. v Public Serv. Comm. of State of N. Y.,*59 AD2d 17). Two provisions of the Public Service Law are proposed by the PSC as authority in support of the ban in question. Initially, it is urged that subdivision 3 of section 65 of the Public Service Law is violated by the use of bill inserts in that it gives the managements of the utilities a benefit or advantage unavailable to others. It is clear, however, that subdivision 3 of section

65 relates to the prohibition of discrimination in the provision of services and no such discrimination is present in the instant case.

It is also argued by the PSC that subdivision 2 of section 66 of the Public Service Law authorizes the ban on bill inserts as that section empowers the PSC to "order such reasonable improvements as will best promote the public interest". In support of this argument, it is contended that the order in question is designed to protect utility subscribers generally from the conversion of the billing process into a subsidized forum for the dissemination of management's political views. The majority adopts the position of the PSC that the bill inserts would be inevitably subsidized by the consumer and consequently finds authority in the PSC to prohibit the use of bill inserts. In our view, however, it would not be impossible for the PSC to perform its duty of allocating the cost of these management statements to accounts chargeable to shareholders. We find nothing to prohibit the PSC from proportioning the costs so that the cost attributable to the placing of the bill inserts in envelopes and the mailing of the bill inserts would be chargeable to shareholders rather than ratepayers. Such an apportionment would prevent the subsidizing of management's views through the use of bill inserts. Consequently, we find no express or implied statutory power authorizing the PSC to ban the bill inserts prohibited by its order of February 25, 1977. We would, therefore, affirm both of the judgments here on appeal.

MAHONEY, P. J., and MIKOLL, J., concur with GREENBLOTT, J.; SWEENEY and MAIN, JJ., concur in part and dissent in part in a separate opinion by SWEENEY, J.

Judgment entered March 6, 1978 reversed, on the law, without costs, and order declared constitutional.

Judgment entered March 14, 1978 modified, on the law, by deleting so much thereof as annulled the Public Service Commission's directive; determination confirmed, and, as so modified, affirmed, without costs.