In the Matter of NEW YORK TELEPHONE COMPANY, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, December 4, 1980

APPEARANCES OF COUNSEL

*Raymond F. Burke, John M. Clarke & Gerald M. Oscar (George E. Ashley, Guy Miller Struve, James L. Kerr* and *Robert F. D'Emilia* of counsel), for petitioner.

*Peter H. Schiff (Charles R. Gibson* of counsel), for respondent.

KANE, J.

On December 11, 1978, New York Telephone Company (Company) filed revised tariffs with the Public Service Commission (Commission), which were designed to produce a $240,300,000 increase in annual revenues. Scheduled to take effect on January 11, 1979, the Commission issued orders which suspended these tariffs to and including November 10, 1979. Numerous hearings were conducted during the suspension period and a recommended decision was issued by the Administrative Law Judges on August 13, 1979. On October 26, 1979, the Company wrote to the Commission asking that its decision be rendered sufficiently in advance of the November 10, 1979 date to permit implementation of any authorized rate change at the end of the suspension period. The Company expressed its view that the law did not allow a delay in rate relief for any period longer than that permitted by subdivision 2 of section 92 of the Public Service Law and cited a recent decision of this court as authority therefor *(Matter of New York Tel. Co. v Public Serv. Comm. of State of N.Y.,* 64 AD2d 232, mot for lv to app den 46 NY2d 710). One day before the expiration of the statutory suspension period, the Commission issued its opinion and order. Among other things, it authorized the Company to file amendments to the tariff schedules which would generate additional revenues of $160,750,000 annually, but specified that such amendments were not to become operative until approved by the Commission. The Company was able to comply with the Commission's order on November 19, 1979 and, on the following day, the Commission temporarily approved these rates. The Company now argues that this 10-day delay has deprived it of some $4,440,000 in revenues that would have been collected under the rates approved on November 9, 1979 in violation of statutory provisions governing suspension periods.

While the opinion and order of the Commission decided many other questions, only one additional issue has been

raised in this proceeding. It involves the proper allocation of foreign exchange (FX) and common control switching arrangement (CCSA) service costs between interstate and intrastate subscribers.* The Commission determined that New York consumers (i.e., intrastate subscribers) were absorbing $39,867,000 in local exchange costs that should be recovered from the users of interstate FX/CCSA services. It, therefore, directed that "interstate FX/CCSA subscribers should cover their proper share of the costs of local exchange plant, based on the relative use of that plant to provide service to them." To effectuate this policy, the Commission deferred certain rate decreases of approximately $40,000,000 (ordered elsewhere in its opinion) to February 1, 1980, thus giving the Company time to file new rates, either with the Commission or with the Federal Communication Commission (FCC), to collect the subject $39,867,-000. On December 4, 1979, the Company filed what it termed an exchange system access line terminal charge (ESALT) with the Commission to recover the local exchange portion of FX/CCSA expenses from customers in other States. This new charge would ultimately cost such users $160 per month as compared with a previous charge of less than $10 per month. As might be expected, foreign FX/CCSA users and other interested parties commenced an action in the United States District Court seeking to enjoin the collection of any surcharge on interstate users absent FCC approval, while still others sought a declaratory ruling from the FCC that the Company's tariffs were illegal in this respect. In March of 1980, the FCC assumed jurisdiction over any charges concerning the local distribution of FX/CCSA services that apply only to interstate customers and a confrontation between the Commission and the FCC resulted. The Company sought review of the FCC's ruling in the United States Court of Appeals for the Second Circuit, and of the Commission's November 9, 1979 order in this proceeding.

---

* A customer subscribing to FX can make and receive calls from an exchange outside the subscriber's local calling area without payment of a toll charge and is given a telephone listing in the distant exchange. CCSA customers are allowed such toll-free calling to and from a number of distant exchanges via a switched network of foreign exchange lines.

■ First, we agree with the Company that the Commission unlawfully extended the maximum 10-month suspension period (Public Service Law, § 92, subd 2). Unless no increase whatever is warranted, the Commission cannot simply disapprove proposed rates shortly before the termination of the suspension period without making some provision for effective temporary rates. Otherwise, a mischievous result, evidenced in this case by a $4,400,000 revenue loss due to the Commission's inaction, could frequently upset the regulatory process. The statute plainly seeks to avoid such an unsatisfactory occurrence by granting the Commission power to "establish temporary rates * * * for any period of suspension". In *Matter of New York Tel. Co. v Public Serv. Comm. of State of N.Y.* (64 AD2d 232, 249, *supra*), we made the following observation: "As we view the statutory scheme, petitioner was entitled to have its proposed rates go into effect at the end of the maximum 10-month suspension period unless a final determination had been made or unless temporary rates had been imposed pending a final determination". The words "final determination" contemplate more than a decision within the suspension period. To obtain finality there must be implementation of final or temporary rates. This conclusion is the only logical approach that would prevent an impermissible frustration of the purpose for which the suspension period was designed.

■ Next, in our opinion, the Commission acted unlawfully, arbitrarily and capriciously in directing the Company to recover $39,867,000 in annual expenses by imposing a charge on interstate FX/CCSA customers. The proper separation of investments, operating expenses, taxes and reserves between interstate and intrastate operations has been under the regulation and guidance of the FCC through a Separations Manual for many years. Originally published in 1947 through the efforts of an association in which New York is still a member, and with adjustments from time to time, the manual has apparently functioned satisfactorily until the Commission abruptly departed from its principles in this instance. While this proceeding was pending, the United States Circuit Court of Appeals for the Second Circuit upheld the foregoing jurisdictional ruling of the FCC

*(New York Tel. Co. v Federal Communications Comm.,* 631 F2d 1059) and both the Company and the Commission were parties to that lawsuit. Accordingly, the Commission is without authority to unilaterally direct the Company to collect $39,867,000 in revenue by means of a charge on interstate FX/CCSA customers. Since it is undisputed that revenues in that amount are needed, the Commission must furnish the Company with a satisfactory form of relief at the present time, even though ultimate resolution of the separations question may have to be developed under the Communications Act (see US Code, tit 47, § 410, subd [c]).

The petition should be granted, with costs, and the matter *remitted to the Commission for further proceedings not* inconsistent herewith.

MAHONEY, P. J., SWEENEY, CASEY and HERLIHY, JJ., concur.

Petition granted, with costs, and matter remitted to the Commission for further proceedings not inconsistent herewith.