■ In the Matter of PETER F. COHALAN, as County Executive of the County of Suffolk, et al., Petitioners, v PAUL L. GIOIA et al., as Commissioners of the Public Service Commission, et al., Respondents. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Public Service Commission which granted respondent Long Island Lighting Company a 13.6% electric rate increase. In this article 78 proceeding petitioners seek review of the policy of the Public Service Commission (PSC) concerning consideration of general economic impact factors in rate cases, and of the application of that policy in the 1980 rate proceeding of respondent Long Island Lighting Company (LILCO). During recent years, as energy costs became an increasingly greater factor in the cost of living and in economic and financial decision-making by business, industry, and government, the interrelationship between utility rates and the socio-economic condition of the communities utilities serve has become a subject for consideration by the PSC in the cases before it. In January, 1980, responding to the need for clarification of how and to what degree economic impact data should be considered in fixing utility rates, the PSC issued a *statement of policy concerning evidence of economic impact in rate cases* (Statement of Policy). Citing three, nonexclusive examples, the Statement of Policy affirms that the economic impact of a proposed rate change may directly affect a determination of various elements of the ultimate rate decision in any case. The PSC will also consider such

evidence when making choices among rate-making options within a permissible range of reasonableness. Apart from these specifics, the Statement of Policy declines to frame a set formula for presentation or use of economic impact data, preferring to permit criteria to be developed on a case-by-case basis when such evidence is offered by the interested parties. Consistent with that approach, the statement advises that "the key to a convincing evidentiary demonstration will be the party's ability to identify a nexus between the evidence presented and specific problems at issue in the rate case". In the specific 1980 rate proceeding now under review, LILCO sought a $228,000,000 increase in annual electric rates. Extensive hearings were held before the Administrative Law Judge, at which evidence was presented by interested consumer groups and LILCO relating to possible effects of the proposed increase on employment, the housing market, and the less-advantaged socioeconomic groups within LILCO's service area. The Administrative Law Judge determined that, indeed, the requested rate increase would have an impact on general economic conditions in the area, more than the "ripple effect" projected by LILCO, but less than the "tidal wave" effect predicted by LILCO's opponents. The Administrative Law Judge used economic impact evidence to determine a variety of issues, among which the following three are now principally in contention: (1) the disallowance of some 15 items of otherwise apparently legitimate operating expenses on the ground that economic impact considerations required limiting such expenses to those directly related to providing safe and adequate service; (2) the adoption of an "austerity approach" to over-all operating expenses, freezing them at the level projected for 1981 in LILCO's most recent prior rate case, adjusted only for inflation and actual wage and fuel increases; and (3) the removal from the rate base of $100,000,000 of Construction Work in Progress (CWIP) related to the partially completed Shoreham nuclear power plant, which LILCO sought to have included to counteract serious cash flow problems brought about by rising operating expenses, the financing of the Shoreham nuclear project, and the resultant impairment of LILCO's over-all financial position. The PSC's determination drastically modified the foregoing recommendations. It restored, in part or in whole, various items of the operating expenses totally disallowed by the Administrative Law Judge. The "austerity approach" to over-all operating expenses was rejected. The PSC also restored $100,000,000 of the $200,000,000 addition of CWIP to the rate base requested by LILCO for relief of its cash flow problems. In our view, petitioners have failed to establish any basis for disturbing the determination by the PSC in the instant case. Regarding the validity of the Statement of Policy, on prior occasions we have upheld the authority of the PSC to promulgate general orders, guidelines, and statements of policy respecting service and items of operating expense so long as they are not arbitrary, capricious, or lacking a rational basis (*Rochester Gas & Elec. Corp. v Public Serv. Comm.*, 64 AD2d 345, 353, affd 51 NY2d 823, app dsmd 450 US 961; *Matter of National Swimming Pool Inst. v Kahn*, 48 AD2d 736, 737). We find nothing to suggest any such infirmity in the PSC's Statement of Policy now under review. The statement properly recognizes that economic hardship upon customers may not justify reducing rates below the minimum necessary for a utility to recover its prudently incurred costs, including a reasonable rate of return on its investment (see *Power Comm. v Hope Natural Gas Co.*, 320 US 591, 603; *Matter of St. Lawrence Gas Co. v Public Serv. Comm.*, 42 NY2d 461, 466). We find it quite rational to require a "nexus" between economic impact evidence and specific elements of a rate-making decision. To be sure, the connection between some economic impact factors and certain components of a rate decision will be self-evident, e.g., revenue forecasts or rate design. On other issues, however, the relationship of such

evidence will be remote or nonexistent. As to those, requiring a nexus properly reflects the principle that the PSC's determination of specific issues in a rate case must be based on substantial evidence. At the least, such evidence must be probative in order to be substantial. We likewise find no infirmities concerning the manner in which economic impact evidence was considered by the PSC in the instant case. The PSC's decision demonstrates that economic impact evidence was considered and affected the determination of many issues. It was not obliged to credit that evidence on issues where it either found the evidence unpersuasive or having little relevance to the question at hand. Thus, the PSC could properly allow specific expenses where a nexus between such items and economic factors had not been established. The PSC's rejection of the Administrative Law Judge's "austerity approach", under which he based overall operating expenses on previous projections rather than on the evidence of actual costs, was consistent with our prior holdings against the use of projections when subsequent actual cost data is available (*Rochester Gas & Elec. Corp. v Public Serv. Comm., supra,* pp 349-350; *Matter of New York Tel. Co. v Public Serv. Comm.,* 64 AD2d 232, 241-243, mot for lv to app den 46 NY2d 710). Nor can we say that the PSC's determination to include additional CWIP for the Shoreham nuclear construction in the rate base lacked a rational foundation. The PSC separately determined that it was in the interest of LILCO and its customers that the completion of the Shoreham project should be accelerated, but would require additional financing. In determining that additional CWIP in the rate base was necessary to improve LILCO's financial position in order to accomplish that goal, the PSC employed the kind of expertise on rate base issues which is entitled to deference on review (*Matter of Niagara Mohawk Power Corp. v Public Serv. Comm.,* 59 AD2d 73, mot for lv to app den 43 NY2d 646, app dsmd 437 US 901). In short, an examination of the record and the PSC's decision reveals nothing arbitrary in its use of economic impact evidence in the instant case. That evidence was subject to conflicting inferences, and the choice among those inferences and the weight to be given to economic impact data were well within the PSC's discretion. Given the limitations upon the scope of judicial review in these matters, we may not substitute our judgment for that of the PSC's (*Matter of Legislature of County of Rockland v New York State Pub. Serv. Comm.,* 49 AD2d 484, 489). An unrelated, remaining issue raised by petitioners is the validity of the PSC's determination directing LILCO to flow through 75% and retain 25% of some $800,000 in anticipated property tax refunds. We cannot say that the PSC's determination to permit LILCO to retain 25% of the tax refunds as an incentive for continued vigorous efforts to obtain reductions in property tax assessments, ultimately of benefit to rate payers, lacks a rational basis. It, therefore, was a decision wholly within the discretionary authority of the PSC (Public Service Law, § 113, subd 2; *Matter of New Rochelle Water Co. v Public Serv. Comm.,* 31 NY2d 397, 404; *Matter of Spring Valley Water Co. v Public Serv. Comm.,* 71 AD2d 55, 57-58, mot for lv to app den 49 NY2d 706). For all of the foregoing reasons, the determination of the PSC should be confirmed and the petition dismissed. Determination confirmed, and petition dismissed, without costs. Sweeney, J. P., Main, Casey, Weiss and Levine, JJ., concur.