In the Matter of NEW YORK TELEPHONE COMPANY, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent, and ROBERT ABRAMS, as Attorney-General of the State of New York, Intervenor-Respondent.

Third Department, January 19, 1984

APPEARANCES OF COUNSEL

*Raymond F. Burke, John M. Clarke, Gerald M. Oscar* and *John B. Messenger* (*Davis, Polk & Wardwell* [*Guy Miller Struve, L. Gordon Harriss, James D. Liss* and *Lynn E. Busath* of counsel]), for petitioner.

*David E. Blabey* (*Lawrence G. Malone* and *Timothy P. Sheehan* of counsel), for respondent.

*Robert Abrams, Attorney-General* (*Charlie Donaldson* of counsel), for intervenor-respondent.

OPINION OF THE COURT

CASEY, J.

In June of 1982, petitioner New York Telephone Company (Company) filed revised tariffs designed to yield a substantial increase in its gross revenues. Proceedings pursuant to article 5 of the Public Service Law, including 27 days of evidentiary hearings and several days of public hearings after the administrative law judges issued their report, resulted in a 249-page opinion by the Public Service Commission (Commission) analyzing the various components of the Company's request for a rate increase. The Commission determined that the Company was entitled to a $185.9 million increase in its annual revenue, an amount substantially less than the Company sought in its filing. The Company commenced the instant CPLR article 78 proceeding, alleging six separate grounds for annulling the

Commission's determination in part. The Company has pursued only five of these grounds in its brief, and we will consider the issues in the order in which they are presented by the Company.

█ The Company first argues that in refusing to permit use of the equal life group (ELG) method of depreciation, the Commission arbitrarily and capriciously ignored a binding order of the Federal Communications Commission (FCC). The Commission concedes that it is ordinarily bound by orders of the FCC and that if the FCC order at issue here is binding, the Commission cannot deny the Company permission to use the ELG method of depreciation. The Commission nevertheless contends that the FCC lacked the authority to interfere with the State's discretion in selecting the appropriate method of depreciation for the purposes of setting intrastate rates and that the FCC order represents a reversal of a long-standing policy recognizing this principle. Thus, argues the Commission, there exists a rational basis for its determination to ignore the FCC order and use a depreciation method other than the ELG method, at least until such time as the Federal courts determine the validity of the FCC order. We reject this argument, for underlying it is the concept that as long as the Commission has grounds for believing that an FCC order is invalid, the order lacks vitality until it is upheld by the appropriate Federal court. Such a theory is in direct conflict with the Federal Communications Act, which provides that "all orders of the [FCC] * * * shall continue in force * * * until the [FCC] or a court of competent jurisdiction issues a superseding order" (US Code, tit 47, § 408). Exclusive jurisdiction to review FCC orders rests with the United States Court of Appeals (US Code, tit 28, § 2342, subd [1]), and it is undisputed that although a proceeding to review the FCC order at issue has been commenced in the appropriate court, and the Commission has intervened in that proceeding, the FCC order has not been stayed, vacated or superseded. Under such circumstances, we find that the Commission's determination to ignore the order of the FCC lacks a rational basis.

The Company next challenges the Commission's refusal to consider updated operator work time studies in comput-

ing the Company's intrastate expenses. It is conceded that this issue is controlled by our recent holding in *Matter of New York Tel. Co. v Public Serv. Comm.* (96 AD2d 705, mot for lv to app. granted 60 NY2d 558), which found no rational basis for a similar ruling by the Commission in another proceeding. Thus, the Commission's determination on each of the foregoing issues must be annulled.

In contrast to the issues discussed above, the issues discussed hereafter involve highly complex technical problems, the resolution of which require the exercise of fact-finding and judgmental powers within the expertise of the Commission, whose judgment in such matters will be set aside only if it can be shown that a rational basis and reasonable support in the record are lacking (see *Matter of New York State Council of Retail Merchants v Public Serv. Comm.,* 45 NY2d 661, 672). "The Commission 'is not bound to entertain or ignore any particular factor in discharging its primary responsibility to determine rates that are just and reasonable' * * * Nor must the Commission's determination be 'wholly free from error in the process, or quite in accord with a judicial view of how the procedure before the commission should be managed in detail' * * * 'The scope of judicial review in these matters is, of course, very limited * * *. The question before us is whether there is a rational basis for the commission's finding that the rates in question are just and reasonable' " (*Matter of New York Tel. Co. v Public Serv. Comm. of State of N. Y.,* 64 AD2d 232, 239, mot for lv to app den 46 NY2d 710).

■ In reviewing the Company's projected revenues and expenses from certain terminal equipment, the Commission found a "mismatch" in the Company's forecasts, which, according to the Commission, produced projected expenses from equipment that was not considered in determining projected revenue, thereby requiring a correction. The Company contends that the Commission's determination concerning the "mismatch" is arbitrary and capricious and deprived the Company of a fair hearing. We disagree.

The Company points to testimony indicating that the same forecast of equipment was used in estimating revenue as was used to project expenses, but there is also evidence in the record from which it could reasonably be

inferred that projected revenues and projected expenses were not based on identical equipment forecasts and that, therefore, a "mismatch" exists. Where the evidence is subject to conflicting inferences, the choice among those inferences and the weight to be given them in fixing rates are well within the Commission's discretion (see *Matter of Cohalan v Gioia,* 88 AD2d 722, 724). There is no merit in the Company's claim that it was deprived of a fair hearing because the Commission did not point out the "mismatch" during the hearings so that the Company could provide an explanation or submit evidence in rebuttal. The Commission's finding is based upon evidence presented at the hearings by the Company to support a portion of its claimed revenue requirement, and there is nothing in the record to suggest that the Company was not given ample opportunity to explain its evidence and submit all relevant material. Since the Commission's determination concerning the "mismatch" has a rational basis, it must be confirmed (see *Matter of New York Tel. Co. v Public Serv. Comm. of State of N.Y., supra*).

The Company also alleges error in the Commission's determination to disallow the increase projected by the Company in the "Wage Rate-Other" category of its payroll expense. "Wage Rate-Other" is a cost classification used to measure the impact of all factors affecting the average wage rate, other than general wage increases, and includes progression pay increases, changes in employee mix, and hirings at interim level wage rates to replace departing higher paid employees. The Company contends that in response to Commission criticism in recent rate proceedings concerning the accuracy of the methods used in projecting "Wage Rate-Other", the Company presented a detailed forecast, using one or more of three techniques to analyze each of the 26 accounts for which rate year expenses were prepared. The Company argues that since the Commission previously called for a more accurate method of projecting "Wage Rate-Other", the Commission's refusal to accept the more detailed Company forecast constituted an abrupt reversal of past practice and that such inconsistent policy renders its determination arbitrary and capricious.

■ The Company's argument ignores the reasons stated by the Commission for its disallowance of the Company's "Wage Rate-Other" forecast. For example, the Commission concluded that "[w]hile the company's presentation is more sophisticated and refined than it was in the last case, the soundness of its method and the reliability of its results have once again been seriously called into question by staff's specific criticisms". The Commission also noted that staff studies, showing a decrease in the "Wage Rate-Other" category, cast considerable doubt on the Company's projections of an increase. In short, the Commission rejected the Company's projections due to its dissatisfaction with the accuracy of the method used by the Company to derive those projections, which is patently consistent with its past policy. The Commission's concern as to the accuracy of the Company's projections was based on evidence in the record and, therefore, had a rational basis. The Company's claims that its projections were accurate and that staff evidence to the contrary should be disregarded goes to the weight of the evidence, not the rationality of the Commission's determination. The Commission's disallowance of the Company's "Wage Rate-Other" projections is well within its power to determine the factors and the weight to be accorded those factors in setting rates that are just and reasonable (see *Matter of Tele/Resources v Public Serv. Comm.*, 58 AD2d 406, 410, mot for lv to app den 43 NY2d 647).

The Company's final argument concerns the Commission's determination to modify the Company's forecast of its commercial and marketing work force needs following implementation of FCC orders which prohibited the Company, and other Bell operating companies, from purchasing or providing new customer premises equipment after January 1, 1983, but allowed the Company to continue its efforts with respect to existing or "imbedded" equipment. The Company included in its rate filing an estimate, based on a process of extrapolation using historical ratios and previous work force levels, of the reduction in its work force resulting from this "bifurcation". The Company thereafter submitted a supplemental estimate, based on an entirely different method which involved a process of rebuilding the Company's commercial and marketing needs

"from the bottom up". The Commission rejected a staff recommendation that the supplemental estimate be disregarded as untimely, but made certain adjustments to the supplemental estimate in arriving at the allowable expense for the Company's commercial and marketing work force after "bifurcation".

■ The Company contends that in making these adjustments, the Commission impermissibly substituted its judgment for that of the Company in a matter which traditionally falls within the realm of management's business judgment. The Commission, on the other hand, argues that the Company cannot, under the guise of management's business judgment, justify projected work force levels that are not financially prudent. "The commission has been empowered to determine 'just and reasonable' telephone rates * * * and, as the United States Supreme Court noted many years ago, the rate-making power is not 'subservient to the discretion of [a utility] which may, by exorbitant and unreasonable salaries, or in some other improper way, transfer its earnings into what it is pleased to call "operating expenses" ' " (*Matter of General Tel. Co. v Lundy,* 17 NY2d 373, 379). Thus, there can be no doubt that the Commission had the authority and the duty to review the Company's operating expenses, including those related to the commercial and marketing work force, and thereby prevent unreasonable costs from being passed on to its ratepayers (*supra,* at p 378), as part of its function to protect those ratepayers (*supra,* at p 380).

As to the factual basis for the Commission's determination, it is undisputed that the reduction in the commercial and marketing work force projected by the Company resulting from "bifurcation" was smaller than the proportion of the commercial and marketing work force that was selling new customer premises equipment prior to "bifurcation". The Company sought to justify this disparity through assertions that a smaller work force would be less efficient and that increased competition required more intense effort. The Commission determined that the Company had failed to show the "financial prudence" of its work force projection, concluding that the Company's forecast would result in a substantial redirection of sales effort

without considering the effect such a redirection would have on revenue. Specifically, the Commission determined that adjustments to the Company's projection were necessary in five disputed areas. In support of these adjustments, the Commission's determination relied upon divestiture guidelines prepared by AT&T, the Company's initial work force projection, testimony, staff objections and Company responses. In evaluating the evidence in the record, the Commission could reasonably conclude that the Company's work force projection was unreasonably high in certain areas and that adjustments were necessary, despite Company assertions that its business judgment justified the projection. The Company asserts that in each of the five disputed areas its supplemental work force projection was in fact reasonable, but once again we conclude that this argument goes to the weight to be accorded evidence in the record and the inferences to be drawn therefrom which are matters for the Commission, not the courts (see *Matter of Cohalan v Gioia,* 88 AD2d 722, 724, *supra*).

In conclusion, while there is a rational basis for the Commission's determination concerning those issues which involve an evaluation of the evidence and the exercise of judgment as to matters within the expertise of the Commission, the determination is erroneous as a matter of law insofar as it disallowed use of the ELG method of depreciation and updated operator work time studies.

The determination should be modified, by annulling so much thereof as disallowed petitioner's use of the equal life group method of depreciation mandated by the Federal Communications Commission and disallowed use of updated operator work time studies; matter remitted to the Public Service Commission for further proceedings not inconsistent herewith; and, as so modified, confirmed, without costs.

MAHONEY, P. J., MAIN, YESAWICH, JR., and LEVINE, JJ., concur.

Determination modified, by annulling so much thereof as disallowed petitioner's use of the equal life group method of depreciation mandated by the Federal Communications Commission and disallowed use of updated operator work time studies; matter remitted to the Public

Service Commission for further proceedings not inconsistent herewith; and, as so modified, confirmed, without costs.