OPINION OP THE COURT
Meyer, J.
The determination of the Public Service Commission that because the New York Telephone Company had not used studies based on seven-calendar-day holding time in its rate request it could not use updated operator work time studies covering the five days of the business week is arbitrary because without rational basis. The order of the Appellate Division should, therefore, be affirmed, with costs.
New York Telephone Company (NYT) services customers who make both interstate and intrastate calls. The Federal Communications Commission (FCC) sets rates for interstate service, and the Public Service Commission (PSC) fixes intrastate rates. To provide for the required separation of expenses between interstate and intrastate Operations (see Smith v Illinois Bell Tel. Co., 282 US 133, 149-151), the Congress has established the Federal-State Joint Board (US Code, tit 47, § 410, subd [c]), composed of three FCC commissioners and four State commissioners. The State commissioners must be approved by the FCC but are nominated by the national organization of State commissioners, of which the PSC is a member. The Joint Board has issued a Separations Manual establishing procedures for division of expenses, which has the force of Federal regulation (47 CFR 67.1).
Two of the expense factors requiring division between interstate and intrastate calls involve the time spent by operators in relation to calls (operator work time [OWT]) and the time the company’s equipment is in use while the customer dials and converses after the desired connection is made (holding time). Until the PSC raised the issue in the present rate proceeding, both have been allocated on the basis of studies of the five days of the business week rather than the seven days of the calendar week, those studies being updated periodically when they revealed *61 significant changes in the process. From 1971 to 1978 the OWT factor remained fairly constant, but in 1978, 1979, 1980 and 1981 updated OWT factors were used, reflecting the decrease in operator time devoted to interstate calls resulting from the electronic handling of such calls and consequent greater amount of operator work time spent on intrastate calls.
In its 1981 filing to establish 1982-1983 rates NYT used updated OWT costs. The PSC, however, disallowed their use and required the use of the 1971 OWT factors, the effect of which was to disallow in fixing the intrastate rate $11.3 million of traffic expenses that would have been allowed had the updated OWT factors been used. That sum cannot be recovered in interstate rates which are fixed by the FCC on the basis of the updated five-day OWT studies which allocated less operator time to interstate calls. The PSC does not controvert that the $11.3 million of traffic expenses disallowed by it cannot be recovered from interstate traffic, nor does it dispute that all other regulatory bodies, Federal and State, allow the use of updated OWT factors, or that it has allowed 12 other New York telephone companies to use 1978 and later updated OWT factors in computing their rates. It justifies its requirement that NYT rates be computed on the basis of 1971 factors without updating on the ground that NYT seeks to use updated studies only where they show a shift of expense to intrastate operations and thus is manipulating data to support the increase of such rates. The only example offered by the PSC, however, is in holding time studies. Although holding time is currently divided between interstate and intrastate traffic on the basis of five-day business week studies, the PSC position is that recent technological developments have made seven-day studies feasible, that such studies would be more accurate than five-day studies, and would show a shift to interstate operations even greater than the shift to intrastate traffic that would result from use of updated OWT data. Because NYT does not use seven-day studies for any purpose, the PSC refuses to allow it to use OWT five-day studies made after 1971.
Although at first blush the PSC position appears logical, that appearance does not withstand closer scrutiny. First, *62 it is arbitrary and irrational, when the use of updated five-day OWT studies is allowed by every other regulatory body in the country, and by the PSC itself in fixing the New York rates of 12 other companies, none of which uses seven-day holding time studies, to deny NYT the right to use updated five-day OWT studies. Particularly is this so when, as detailed below, the FCC has issued a formal opinion forbidding reliance on seven-day studies until it and the Joint Board has completed their studies of the use of seven-day data, and in light of the fact that the PSC has offered no meaningful explanation for the disparity between its treatment of NYT and other New York companies (see Matter of New York Tel. Co. v Public Serv. Comm., 64 AD2d 232, 244-246, mot for Iv to app den 46 NY2d 710).
Second, NYT’s use of updated five-day OWT studies and failure to use seven-day holding time studies is in full accord with FCC rulings and may well be mandated by preemptive Federal law. Although section 11.212 of the Separations Manual provides that only the studies upon which the separations are based must cover “a representative period,” in practice, such periods have been five-day, business week units (see Establishment of Interstate Toll Settlements and Jurisdictional Separations Requiring the Use of Seven Calendar Day Studies [hereinafter “Jurisdictional Separations”], FCC 83-180). Five-day studies with respect to holding time have been regularly updated, resulting in apportionment of more holding time expense to interstate operations. Five-day OWT studies, though showing no significant change until 1978, have thereafter been updated elsewhere, but the PSC has denied NYT permission to use any later OWT study than 1971.
The rationale offered for that ruling is that updated studies and seven-day studies must be treated alike. Either the use of both is authorized by the Separations Manual, or neither can be used until the Joint Board has approved a Manual change, but NYT cannot use one (updated OWT studies) without the other (seven-day studies). The difficulty with that position is that the FCC has taken the opposite view. In a letter dated January 31,1984 addressed to the general attorney of Southwestern Bell, it has settled a dispute between that company and the Arkansas Public *63 Service Commission by ruling that “updated studies of OWT are required to assure representativeness” and that to freeze OWT at the 1970 level “would be arbitrary and contrary to providing proper consideration to relative occupancy and time.” In Jurisdictional Separations (FCC 83-180, pp 17-19), a formal opinion, it has, however, held that seven-day studies may not be used until approved by the Joint Board because such studies would shift costs to interstate operations, thereby disrupting the balance established by the Separations Manual, which is already deliberately weighted to shift costs away from intrastate operations. Thus, the FCC requires NYT to divide expenses in a manner which the PSC refuses to permit.
The PSC argues that its exclusive control over intrastate telephone rates may not be pre-empted by the FCC. The FCC has taken a directly contrary position in Jurisdictional Separations (op. cit.). More importantly, the PSC’s position ignores the motivating force behind creation of the Joint Board and adoption of the Separations Manual: a uniform nationwide system of allocation of expenses that will assure that service providers will neither recover from interstate and intrastate operations more than their costs, nor fail to recover all of the costs incurred (Jurisdictional Separations, op. cit., p 19; American Tel. & Tel., 9 FCC 2d 30, 90-91). Here, as the Commission concedes, NYT has been deprived of recovery of $11.3 million of its costs which it cannot recover from interstate rates. Pre-emption aside, it is irrational for the PSC to apply the Separations Manual methodology but do so in a manner inconsistent with FCC rulings and which denies NYT all possibility of recovering part of the expense incurred by it in providing telephone service (Matter of New York Tel. Co. v Public Serv. Comm., 98 AD2d 535, 537-538; Matter of New York Tel. Co. v Public Serv. Comm., 77 AD2d 332, 335-336, app dsmd 52 NY2d 1072, mot for lv to app den 53 NY2d 605).
Finally, the PSC contends that even if it erred in refusing to accept updated OWT studies, NYT cannot be granted relief unless it establishes that the 1982-1983 rate fixed is confiscatory. A rate which is confiscatory is constitutionally infirm (Power Comm. v Hope Gas Co., 320 US 591, 601), but a demonstration of unconstitutionality is not *64 a sine qua non of the overturning of a PSC rate determination. Subdivision 1 of section 97 of the Public Service Law mandates that the PSC “determine * * * just and reasonable rates” with “due regard * * * to a reasonable average return upon the value of the property actually used in the public service”, and we have had occasion in Matter of New York Tel. Co. v Public Serv. Comm. (309 NY 569, 576-578) to comment upon the difference between constitutional and statutory considerations. Having determined that NYT should be allowed the “reasonable average return” of 15.42% and admitted that if it erred in relation to use of updated OWT studies that return would be reduced to 15.23%, the PSC has acknowledged, in effect, that the statutorily mandated reasonable return will not have been provided unless its error, as we hold it to be, in refusing to allow use of updated five-day OWT studies is corrected. Moreover, in arguing as it does, it seeks to uphold its determination on a basis other than that on which it acted (Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588, 593).
For the foregoing reasons, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Cooke and Judges Jasen, Jones, Wacht-ler, Simons and Kaye concur.
Order affirmed, with costs.