In the Matter of CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Appellants, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, February 21, 1985

**APPEARANCES OF COUNSEL**

*Joy Tannian, Peter Garam* and *Celeste A. Contrucci* for Consolidated Edison Company of New York, Inc., appellant.

*Huber, Lawrence & Abell* (*Frederic H. Lawrence* and *Kenneth M. Jasinski* of counsel), for New York State Electric & Gas Corporation, appellant.

*Kenneth D. Archer* for Orange and Rockland Utilities, Inc., appellant.

*Nixon, Hargrave, Devans & Doyle* (*Richard N. George* of counsel), for Rochester Gas and Electric Corporation, appellant.

*David E. Blabey* (*Timothy P. Sheehan* of counsel), for respondent.

**OPINION OF THE COURT**

WEISS, J.

On June 20, 1980, the United States Supreme Court held that when the Public Service Commission of the State of New York (PSC) prohibited utility companies from including inserts which expressed the views or opinions of the utility on controversial issues of public policy in envelopes containing service bills to customers, the PSC violated the US Constitution, 1st Amendment, as applied to the States through the 14th Amendment (*Consolidated Edison Co. v Public Serv. Commn.,* 447 US 530) (hereinafter *Consolidated Edison*). The decision left unresolved the question of whether the use of the billing process by a utility management for dissemination of its views and opinions on political or ideological issues, or to promote its interests, amounted to a forced subsidy from ratepayers and, if so, whether there should be an allocation of the costs between shareholders and ratepayers to avoid such subsidization, as well as the methodology to be employed for such allocation (*Consolidated Edison, supra,* p 543, n 13; p 544 [Marshall, J., concurring]).

A proceeding was commenced by the PSC on July 16, 1980 culminating in a March 23, 1983 order which determined that: "Each utility which mails bill inserts to its ratepayers must, if the bill inserts contain messages defined in Account 426.4 (for electric and gas utilities) or Account 323.1 (for telephone utilities),[1] charge the account with 50% of the costs of the mailing. All revenues (including any tax effects) associated with costs charged pursuant to this order will be placed in a deferred account. The deferred amounts shall be deducted from the utility's revenue requirement in its next rate proceeding."

In effect, the PSC determined that the costs be borne on a 50-50 basis with shareholders and ratepayers sharing equally those

---

[1].  The Uniform System of Accounts includes account 426.4 (for electric and gas utilities), which is found in 16 NYCRR ch II, subch F, art 1, Income Accounts, and account 323.1 (for telephone and telegraph utilities), which is found in 16 NYCRR ch VI, subch E, art 1, Income Accounts. Both accounts are entitled "Expenditures for Certain Civic, Political and Related Activities" and state: "This account shall include expenditures for the purpose of influencing public opinion with respect to the election or appointment of public officials, referenda, legislation, or ordinances (either with respect to the possible adoption of new referenda, legislation or ordinances or repeal or modification of existing referenda, legislation, or ordinances) or approval, modification or revocation of franchises; or for the purpose of influencing the decisions of public officials or advancing the political objective of the utility, but shall not include such expenditures which are directly related to appearances before regulatory or other governmental bodies in connection with the reporting utility's existing or proposed operations."

costs including stamps, envelopes, processing costs, and the costs of assembling and updating ratepayers mailing lists. The formula for the cost of maintaining and updating the mailing lists was to be determined as follows: "each utility shall multiply the number of bills used for political messages divided by 12 (six if the company bills bi-monthly) times 50% of the cost of maintaining its billing list for such years". This sum would be allocated and deferred (added to accounts 426.4 and 323.1).

Petitioners, electric and gas utilities, thereupon commenced a combined CPLR article 78 proceeding, seeking annulment and vacatur of the March 23, 1983 PSC order, and an action for declaratory judgment, declaring that said order is violative of the US Constitution, 1st, 5th and 14th Amendments and the NY Constitution, article I, §§ 6, 7, 8 and for judgment enjoining enforcement of said order. Special Term denied the relief sought in both the petition and verified complaint. Petitioners' direct appeal to the Court of Appeals was transferred to this court by the Court of Appeals, which noted that "[a] direct appeal does not lie where it does not involve a statutory provision" (62 NY2d 912, 913).

Petitioners initially argue that the PSC order abridges their freedom of speech because it is a content-based restriction on noncommercial speech protected by the 1st Amendment, in that they are compelled to pay one half of the mailing costs when the message inserted into the bill packet espouses their views on controversial issues of public policy whereas there is no charge when a message deals with noncontroversial subjects. They argue that this practice is expressly prohibited by the *Consolidated Edison* case (*supra*). We disagree. In our view, the order is not a content-based restriction, and thus need not provide a precisely drawn method of serving a compelling State interest. The order in no way restricts petitioners from utilizing bill packet inserts to disseminate their views on controversial subjects. It merely holds that when a utility bootstraps its message onto a vehicle fully paid for by the recipient customers, it should then share equally in the cost of that mailing. Moreover, proportionate allocation effects the PSC's prime function of "separat-[ing] those costs which should be borne by ratepayers from those which are properly chargeable to shareholders" (*Rochester Gas & Elec. Corp. v Public Serv. Commn.*, 51 NY2d 823, 825, *appeal dismissed* 450 US 961). Such determinations will not be set aside by this court absent a showing, not here present, that a rational basis in the record is lacking (*see, Matter of Cohalan v Gioia,* 88 AD2d 722, 723).

Although utilities are clearly entitled to insert printed materials in the billing envelopes expressing their views on controversial public policy issues, no corresponding duty exists on the part of government or the ratepayers to bear the cost burdens necessary to realize that right (*see, Harris v McRae,* 448 US 297, 317, n 19). While petitioners readily acknowledge that they are responsible for incremental costs (additional postage due, cost of printing and inserting into bill envelopes) incurred by inclusion of their messages, they contend that any requirement that they pay one half of the amount of the basic costs (normal postage and bill insertion) results in impermissible taxation. It is clear that a public utility cannot include in its rate base the costs of political advertising and lobbying since customers derive no service-related benefits from such materials (*Consolidated Edison, supra,* p 550 [Blackmun, J., dissenting]). Since the benefits of disseminating such information inure to the utility's shareholders, so also should the costs (*see, Southwestern Elec. Power Co. v Federal Power Commn.,* 304 F2d 20, *cert denied sub nom. Alabama Power Co. v Federal Power Commn.,* 371 US 924).

Without the subject order, there is imposed upon ratepayers a subtle, indirect subsidization of the transmittal of management's controversial or political views. The PSC is empowered to consider the "nonutility" use of assets including a utility plant or the nonutility nature of company expenditures, or to take appropriate rate-making action to ensure that ratepayers are not compelled to pay for the cost of such activities or expenditures (*see, Rochester Gas & Elec. Corp. v Public Serv. Commn., supra,* p 825; *Matter of New York Tel. Co. v Public Serv. Commn.,* 64 AD2d 232, 247-248, *lv denied* 46 NY2d 710; *Matter of New York Water Serv. Corp. v Public Serv. Commn.,* 12 AD2d 122, 128-129, *lv denied* 10 NY2d 705). Petitioners contend that they should be entitled to a "free ride" when the cost of mailing a bill packet is not increased by the insertion of their informational literature. As noted by Justice Blackmun, "[e]ven though the free ride may cost the ratepayers nothing additional by way of specific dollars, it still qualifies as forced support of the utility's speech" (*Consolidated Edison, supra,* p 552 [Blackmun, J., dissenting]). This court has previously reached a similar conclusion (*Matter of Consolidated Edison Co. v Public Serv. Commn.,* 63 AD2d 364, 367-368, *affd* 47 NY2d 94, *revd on other grounds* 447 US 530). Indeed, the converse of petitioners' logic might just as easily be utilized to suggest that whenever petitioners insert literature expressing management's views on controversial issues affecting the public or upon political issues, the ratepayers be given a "free ride" for their service bills,

assuming only incremental costs while shareholders bear the fixed costs of mailing (*Consolidated Edison, supra,* p 556 [Blackmun, J., dissenting]). Accepting petitioners' thesis, no true complaint could be registered by the shareholders since only a "subtle and indirect subsidization" would be imposed upon them.

Finally, the cost allocation formula adopted by the PSC is not an unreasonable means of treating costs and should be upheld as a proper application of its technical expertise and judgmental powers (*see, Rochester Gas & Elec. Co. v Public Serv. Commn., supra,* p 825; *Matter of New York Tel. Co. v Public Serv. Commn.,* 98 AD2d 535, 538; *Matter of Brooklyn Union Gas Co. v Public Serv. Commn.,* 101 AD2d 453, 457). There is no noxious nostrum present here. The PSC has adopted an alternate position in which the respective parties must bear an equitable share of the fixed mailing costs.[2] The position reached is a rational resolution of a complex cost allocation issue. It must be remembered that the issue arises not out of the rendition of utility services to customers, but rather solely because petitioners seek to impress their own political and ideological views upon their customers in addition to their business of selling energy services.

MAIN, J. P. (dissenting). We respectfully dissent. At the outset, we agree with the observation of Justice Blackmun and recognize that the cost allocation issue presently confronting us is difficult (*Consolidated Edison Co. v Public Serv. Commn.,* 447 US 530, 554 [Blackmun, J., dissenting]). After careful consideration of this closely contested issue involving sharply competing values, we are of the view that the order of the Public Service Commission (PSC) unconstitutionally infringes upon petitioners' freedom of speech.

We recognize that this case does not involve the proportioning of costs such that the cost attributable to the placing of the controversial bill inserts in the envelopes and the mailing of the controversial bill inserts is charged to shareholders instead of ratepayers. Petitioners acknowledge that they (or more precisely, their shareholders) are responsible for those costs which would not be incurred but for the inclusion of the controversial bill insert. This case does involve a more subtle and indirect subsidization, one which arises from petitioners' ability to utilize a preexisting distribution system at no additional cost to

---

**2.** Even under this formula, petitioners' distribution costs would be less than they would otherwise be if separate, independent distribution means were used, thus effecting a partial free ride to management (*Consolidated Edison, supra,* p 554 [Blackmun, J., dissenting]).

ratepayers and thereby to avoid expenses which would be incurred if dissemination was accomplished by other means. Such subtlety and indirectness distinguish this case from such cases as *Abood v Detroit Bd. of Educ.* (431 US 209) and *Rochester Gas & Elec. Corp. v Public Serv. Commn.* (51 NY2d 823, *appeal dismissed* 450 US 961), which involved impermissible attempts by entities to require direct financial support from members and ratepayers for political activities and advertising, respectively. In the absence of direct financial support in this case, we do not find the holdings of these cases persuasive.

The compelling State interest relied on by the PSC to support the constitutionality of its order is the prevention of subsidization of petitioners' views on controversial issues of public policy by those who may not support those views. We have already described, however, that the subsidization in this case is indirect and slight — amounting only to petitioners' taking advantage of a distribution mechanism already in place without causing any increase in the amount paid by ratepayers and without impermissibly invading the ratepayers' right to privacy (*see Consolidated Edison Co. v Public Serv. Commn.,* 447 US 530, 541-542, *supra; Cohen v California,* 402 US 15). Considering the fundamental nature of petitioners' freedom of speech rights, the minimal, indirect subsidization which results from petitioners' exercise of those rights, and the potential for unduly restricting petitioners' exercise of those rights, we conclude that the justification offered by the PSC to support its cost allocation order is insufficient. Petitioners' 1st Amendment rights, and corresponding free speech rights under the State Constitution, are sufficiently strong and fundamental to withstand the limited and indirect subsidization present in this case.

Accordingly, we would conclude that the PSC's order violates petitioners' freedom of speech and that the judgment appealed from should be reversed.

MIKOLL and YESAWICH, JR., JJ., concur with WEISS, J.; MAIN, J. P., and HARVEY, J., dissent and vote to reverse in an opinion by MAIN, J. P.

Judgment affirmed, with costs.