*1086 OPINION OF THE COURT
John G. Connor, J.
Petitioners (referred to as Utility Companies) move pursuant to CPLR article 78 for declaratory judgment to annul a statement of policy issued by the New York State Public Service Commission (Commission).
Presented herein is whether the Commission may compel the Utility Companies to include the opinions and views of certain consumer groups (CUBS) in billing envelopes mailed to the consumer.
Relevant to and leading up to this motion are the following facts: In 1980 the United States Supreme Court in Consolidated Edison Co. v Public Serv. Commn. (447 US 530), declared unconstitutional and in violation of the 1st Amendment, the restraint by the New York Public Service Commission prohibiting Utility Companies from inserting into their billing envelopes, the Utilities’ opinions or viewpoints as to controversial issues of public policy. Subsequent thereto, the New York Legislature rejected twice the formation of a citizens intervention organization. Thereafter, the Commission was asked by the Governor to facilitate the formation of a not-for-profit organization to represent the interests of residential ratepayers. Under the Commission’s order now in dispute, the Commission allows CUBS to use the Utility Companies’ billing envelopes to communicate with ratepayers and to solicit membership. Recently, the Appellate Division, Third Department, in Matter of Consolidated Edison v Public Serv. Commn. (107 AD2d 73), affirmed by a split decision (3 to 2) the right of the Commission to charge the Utilities 50% of the costs of mailing the Utilities’ own insertions as allowed in Consolidated Edison (447 US 530, supra). The declaratory judgment herein pertains not to the Utilities’ own inserts, but to views and opinions by CUBS to be inserted in the Utilities’ mailings.
Respondents contend that the use of the Utility Companies’ billing envelopes will create no extra expense to the Utility Companies, since their opinions and views will take up only “the extra space” in the mailings to the consumer. Respondents urge, since there will be no extra cost, there is no taking of the Utilities’ property. Respondents also assert that ratepayers and the consumer should have equal access and representation in expressing their views and that such action fosters freedom of speech and expression.
Petitioners attack such action basically upon three grounds. First, petitioners claim that such action is in violation of the 1st *1087 Amendment by compelling the Utility Companies to use their property (billing envelopes) to promulgate and disseminate views opposed to their own. Petitioners contend the right to speak guaranteed under the 1st Amendment also includes the right to refrain from speaking. Secondly, the Commission’s action results in an unconstitutional taking of petitioner’s property without just compensation. Lastly, there exists no authorization either legislatively or by express or implied authority for the Commission to direct such action.
The Supreme Court of the United States in the Consolidated Edison case (447 US 530, supra), in allowing the Utility Companies to promote their position, was not required to review the converse. As to whether the utilities must share the billing envelopes with others (CUBS), Consolidated Edison (`supra) points out the distinction as to the use of private property as opposed to public facilities. The Supreme Court stated (447 US, at p 540): “But the Commission’s attempt to restrict the free expression of a private party cannot be upheld by reliance upon precedent that rests on the special interests of a government in overseeing the use of its property.”
Consistent with the above, a public utility, although in a favorable position of limited competition, may own private property. In Matter of General Motors Corp. v Public Serv. Commn. (95 AD2d 876,877 [3d Dept]), the court stated: “While customers of utilities are entitled to just and reasonable rates (Public Service Law, § 65, subd 1), they do not acquire any interest in the property of the utility or its funds (Board of Comrs. v New York Tel. Co., 271 US 23).” (See also, United Rys. v West, 280 US 234, 249.)
Intermingled with the Utility Company’s right to use its private billing envelope is the 1st Amendment question as to whether petitioners have the right not to speak.
FREEDOM NOT TO SPEAK
The freedom of expression guaranteed under the Federal Constitution 1st Amendment and the State Constitution, article I, § 8 protects the right to refrain from speaking. In Wooley v Maynard (430 US 705, 714), the court stated: “We begin with the proposition that the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all. See Board of Education v. Barnette, 319 US 624, 633-634 (1943); id., at 645 (Murphy, J., concurring). A system which secures the right to proselytize religious, political, and ideological causes must also guarantee the concomitant right to decline to foster *1088 such concepts. The right to speak and the right to refrain from speaking are complementary components of the broader concept of ‘individual freedom of mind.’ Id, at 637.”
Respondents contend that insertion of the opposing views supported by CUBS will be at no extra cost to petitioners as such inserts will utilize the “extra space” in the envelope. This position ignores the practicality that such opposing views submitted by CUBS will force the petitioners to countervail such views in rebuttal. The “extra space” then evaporates by the proliferation of opposing views in a conduit owned by the Utility Companies. In Miami Herald Pub. Co. v Tornillo (418 US 241), the Supreme Court held unconstitutional a State statute giving equal space to reply in newspapers criticizing political candidates. Unlike Miami (supra), we are not here dealing with a State statute, but a broad statement of policy. Under the Commission’s policy, the Commission has the right to decide what groups (CUBS) will have access to the Utilities’ billing envelopes and will exclude only “clearly misleading” information. The rhetorical question is, who will determine what is “clearly misleading?” Herein lies the danger; not whether the Commission in its good intention desires to give equal opportunity to the consumers in expressing their views, but allowing itself to enter the arena of public opinion. Under the Commission’s statement, it has authority to determine what will be objectionable and to some degree what will be included in petitioners’ envelopes.
In the opinion of this court an ominous threat presents itself to the 1st Amendment in allowing a governmental agency the right to license others in the use of another’s property especially where the use of such property pertains to ideology which may oppose the views of such owner.
As stated in Board of Educ. v Barnette (319 US 624, 641): “Authority here is to be controlled by public opinion, not public opinion by authority.” Similarly, “If the marketplace of ideas is to remain free and open, governments must not be allowed to choose ‘which issues are worth discussing or debating’ ” (Consolidated Edison Co. v Public Serv. Commn., 447 US 530, 537-538, supra, citing Police Dept. v Mosley, 408 US 92, 96).
Since this court finds the Commission’s statement of policy an infringement of petitioners’ rights under the 1st Amendment, it does not address itself to those issues raised under the 5th Amendment as to any taking of petitioners’ property.
By reason thereof, this court is of the opinion that the policy statement of the Public Service Commission in case No. 28655 infringes upon petitioners’ rights under the US Constitution 1st *1089 and 14th Amendments and so declares such policy statement only as it pertains to the requirements compelling petitioners to comply with such order.