In the Matter of BROOKLYN UNION GAS COMPANY, Petitioner, v PUBLIC SERVICE COMMISSION, Respondent, and ROBERT ABRAMS, as Attorney-General of the State of New York, et al., Intervenors-Respondents.

Third Department, May 24, 1984

APPEARANCES OF COUNSEL

*Cullen & Dykman* (*Joseph P. Stevens, Steven L. Zelkowitz* and *M. Margaret Fabic* of counsel), for petitioner.

*David E. Blabey* (*Charles R. Gibson* of counsel), for Public Service Commission, respondent.

*Roland & Fogel* (*Emilio A.F. Petroccione* and *Usher Fogel* of counsel), for New York Oil Heating Association, Inc., respondent.

*Peter Bienstock* (*John H. Reichman* of counsel), for Robert Abrams, as Attorney-General of the State of New York, intervenor-respondent.

*Charles E. Williams, III* (*Cherie A. Gaines* and *Robert N. Felix* of counsel), and *Frederick A. O. Schwarz, Jr., Corporation Counsel,* for New York City Housing Authority and another, *amici curiae.*

OPINION OF THE COURT

MAHONEY, P. J.

Petitioner, a utility which provides gas service to customers within a portion of the City of New York, filed amendments to its rate schedules on November 25, 1981 seeking a rate increase of approximately $65.4 million or 7%. Petitioner claimed that, based on studies it had done, rates paid by its low volume customers were not sufficient to cover the cost of providing gas service to such customers, whereas its larger customers were paying more than it cost to petitioner to service them. Petitioner sought to remedy this situation by increasing the minimum charge of all of its service classifications except the high volume classification by 17.5%, and by raising all rate blocks above the minimum charge as well as both rate blocks of the high volume service classification by 7.5%. The staff of the

Department of Public Service (department) supported this proposal, as did the City of New York and the New York City Housing Authority, two of petitioner's largest high volume customers, who appeared as intervenors. While other parties did oppose the rate increase, none of them offered a specific rate proposal.

Another issue involved was petitioner's request for an allowance of $1.6 million to cover certain promotional advertising expenses. Department staff contended that .08% of revenues, or $751,000 in this case, was appropriate. Finally, the New York Oil Heating Association, Inc., another intervenor, sought an order requiring that, in any advertising regarding the economic advantages of natural gas, petitioner must provide a complete description of the cost implications of deregulation of natural gas pursuant to the Natural Gas Policy Act of 1978 (US Code, tit 15, § 3301 *et seq.*).

After extensive hearings on these and a number of other issues, an administrative law judge (ALJ) issued a recommended decision accepting the amount and form of the rate increase sought by petitioner, rejecting petitioner's request regarding promotional advertising expenses and accepting the department's recommendation on that item, and rejecting the proposal for disclosure of the impact of natural gas deregulation. On review, the Public Service Commission (PSC) rejected the ALJ's decision regarding the rate increase and granted an across-the-board 2.8% increase (worth $26 million). The PSC adopted the ALJ's recommendation to limit the promotional and advertising expenses to .08% of revenue. Finally, the PSC ruled that if petitioner relied in any of its promotional advertisements on the price advantage of natural gas, it had to include a disclaimer that any such advantage might dissipate as a result of deregulation. The disclaimer also had to include a telephone number for customers to call to obtain more specific information. Petitioner commenced this CPLR article 78 proceeding seeking to set aside the rulings described above. Such proceeding has been transferred to this court for disposition.

■ Regarding the rate increase, petitioner initially argues that the rate design adopted by the PSC was improper

because it was never introduced in evidence at the hearing but was raised for the first time in a reply brief submitted to the PSC by the Consumer Protection Board (CPB). We disagree. It is true that, while petitioner proposed a specific rate increase scheme which was supported by the department, the rate design ordered by the PSC was not specifically offered into evidence by any party. However, the PSC is charged with the responsibility of setting reasonable rates and, in doing so, it is not bound by the specific rate proposals offered by the parties, so long as its ultimate determination is supported by substantial evidence in the record. The prior rate increase given to petitioner was an across-the-board increase. Simply because petitioner was now seeking a two-stage rate increase, which request was supported by the department, the PSC was not bound to give petitioner some form of a two-stage rate increase. The necessary implication of the PSC's refusal to grant a two-stage increase would be that it would grant, if anything, an across-the-board increase. This is precisely what the PSC did.

We also reject petitioner's argument that the PSC's decision to adopt a specific rate design which was proposed by the CPB in a reply brief denied petitioner its right to cross-examine or respond to such proposal. Petitioner offered a great deal of evidence in support of its two-stage rate increase and there is nothing in the record to suggest that it could have offered additional or different evidence in support of such proposal had a specific across-the-board scheme been offered by the CPB or any of the other parties.

Petitioner also argues that the ultimate rate proposal chosen by the PSC, even if properly considered, is not supported by substantial evidence in the record. The PSC refused to grant a two-stage rate increase because, since petitioner failed to perform a decremental cost study,[1] it was unable to determine the precise relationship of the minimum charge to costs. Petitioner asserts that such a study is not determinative of the relationship between minimum cost and charge. However, such technical matters are within the particular expertise of the PSC and due

---

1. A decremental cost study outlines the savings a utility would realize if a particular customer left the system. It includes expenses such as meter reading, billing and record keeping.

deference must be accorded its view (*Matter of Consumer Protection Bd. v Public Serv. Comm.*, 78 AD2d 65, 69, mot for lv to app den 53 NY2d 607). In our view, the decision of the PSC to reject a two-stage rate increase due to lack of a decremental cost study cannot be said to be irrational or arbitrary and capricious.

We also hold that there is substantial evidence in the record to support the ultimate rate increase arrived at by the PSC. There is no requirement that the PSC accept the testimony of, or evidence presented by, any one particular witness, even if that witness is a member of the staff of the department.

Turning to the issue of the allowance to cover certain promotional advertising expenses, we find that this is a classic example of an issue which rests within the discretion and expertise of the PSC. Petitioner offered evidence supporting its request for an allowance of $1.6 million, while the department offered proof that petitioner's computations failed to demonstrate that the advertising was actually generating an increase in sales and recommended an allowance of .08% of revenues. The PSC stated that the relationship between promotional advertising and increased sales could not be measured precisely but that it was not unreasonable to assume that such a relationship existed. It concluded that, "It is eminently more sensible to permit a fixed percentage as the proper allowance than to continue expending time and money arguing measurement of result or prudence of expense." Determining such matters as the effect of promotional advertising on sales is a matter within the expertise of the PSC. We conclude that its decision to limit the allowance for promotional advertising expenses to .08% of revenues, or $751,000 in this case, is supported by substantial evidence. We note that on a prior occasion this court declined to set aside a similar PSC determination based on a percentage of revenue formula (*Rochester Gas & Elec. Corp. v Public Serv. Comm.*, 64 AD2d 345, affd 51 NY2d 823, app dsmd 450 US 961).

Petitioner next contends that the PSC's requirement of a disclaimer regarding the possible price impact of natural gas deregulation is both beyond the scope of its authority and unconstitutional. The PSC, of course, has only those

powers conferred upon it by the Legislature and such other powers as are incidental thereto or necessarily implied therefrom (*Matter of New York Tel. Co. v Public Serv. Comm.*, 59 AD2d 17, 19). In *Consolidated Edison Co. v Public Serv. Comm.* (47 NY2d 94, 104, revd on other grounds 447 US 530), the Court of Appeals held that the PSC had the statutory authority to prohibit promotional advertising of electricity and to prescribe the content of bills and billing envelopes. Such authority was found to flow from, respectively, the PSC's duty to "encourage all persons and corporations * * * to formulate and carry out long-range programs * * * [for] the conservation of natural resources" (Public Service Law, § 5, subd 2) and its power to "fix and alter the format and informational requirements of bills * * * in levying charges for service, to assure simplicity and clarity" (Public Service Law, § 66, subd 12-a).

In the instant case, the PSC required petitioner, in advertising which is based on the price advantage of natural gas, to include a disclaimer that any such advantage may dissipate as a result of deregulation and to provide a phone number to solicit further information. It is true, as argued by petitioner, that the authority to issue such a directive cannot be found in the above-cited statutory provisions.[2] However, we find authority for the issuance of the directive in another provision of subdivision 12-a of section 66 of the Public Service Law which provides, in pertinent part, that "The commission shall further ensure periodic explanation of applicable rates and rate schedules for the purpose of assisting customers in making the most efficient use of energy." Part of any explanation of applicable rates is the truthful and accurate advertising of the cost of a particular service. The PSC has a genuine concern that advertisements of the cost advantages of natural gas should disclose to customers that deregulation may result in an increase in natural gas prices which could dissipate any price advantage. Such information may be vital to a customer who is considering the expense of converting to

---

**2.** To the extent that petitioner's promotional advertising may be included on billing envelopes and inserts, the authority to require the disclaimer would, of course, be found in subdivision 12-a of section 66 of the Public Service Law (see *Consolidated Edison Co. v Public Serv. Comm., supra*).

natural gas. Thus, we conclude that the PSC had the statutory authority to require the disclaimer.

Petitioner also contends that the disclaimer requirement works an impermissible restriction on its constitutionally guaranteed right to free speech. The First Amendment guarantee of freedom of speech applies to the States by operation of the Fourteenth Amendment (see *Bigelow v Virginia,* 421 US 809, 811). Further, commercial advertisements are entitled to some measure of First Amendment protection (see *First Nat. Bank of Boston v Bellotti,* 435 US 765, 783). The United States Supreme Court has set forth a four-step analysis for determining whether commercial speech may be restricted (*Central Hudson Gas & Elec. v Public Serv. Comm.,* 447 US 557, 563-566).

First, commercial speech which is more likely to deceive the public than inform it or is related to illegal activity is not constitutionally protected. In the instant case, petitioner's potential advertisements cannot be said to be deceptive in the absence of the disclaimer. While it could be argued that any claim of price advantage would be deceptive without a warning regarding deregulation, an advertisement without the disclaimer cannot be said to be untruthful. As the Supreme Court noted, "Even when advertising communicates only an incomplete version of the relevant facts, the First Amendment presumes that some accurate information is better than no information at all" (447 US, at p 562). Assuming that an advertisement is not deceptive and is, therefore, entitled to First Amendment protection, it must then be determined whether the governmental interest is substantial. The State of New York clearly has a substantial interest in requiring a utility, which is by statute heavily regulated, to provide complete information to consumers if it chooses to advertise the price advantages of its service. Given that the governmental interest is substantial, the third step in the analysis is to ascertain whether the restriction directly advances that interest. Here, the disclaimer does so because it puts consumers on notice that the advertised price advantage may disappear after deregulation. Finally, the restriction must be limited and carefully drawn. Here, the PSC did not restrict or limit petitioner's right to expression, but required it to add a

specific disclaimer if it engaged in a certain form of advertising. This disclaimer is specific and is drawn to remedy the situation the PSC sought to correct. Such a disclaimer is not improper (see *Central Hudson Gas & Elec. v Public Serv. Comm., supra,* p 565; *Bates v State Bar of Ariz.,* 433 US 350, 384). We, therefore, conclude that the requirement of the disclaimer did not infringe petitioner's constitutional right of expression.

We also reject petitioner's contention that its equal protection rights were violated because the disclaimer requirement was imposed upon only it and one other utility. The equal protection clause recognizes the right of government to move forward by gradual progression rather than by universal application or not at all (*Dandridge v Williams,* 397 US 471, 486-487; *Matter of New York State Council of Retail Merchants v Public Serv. Comm.,* 45 NY2d 661, 670). Petitioner's due process argument is likewise without merit. Petitioner contends that the legal argument in support of the disclaimer was raised for the first time in a brief of one of the intervenors to the ALJ. However, the issue was brought out at the hearing on cross-examination of one of petitioner's witnesses. Thus, petitioner had the opportunity to offer evidence on this point.

Finally, it is urged that, even if the requirement of the disclaimer was within the statutory authority of the PSC and was not constitutionally infirm, it was arbitrary and capricious and without support in the record. We disagree. It must be kept in mind that the disclaimer is very narrow. Petitioner is not required to state that deregulation *would* result in a price increase which would dissipate any price advantage of gas. It simply is required to state that such *may* occur. Furthermore, the disclaimer is only required when petitioner advertises the cost advantages of natural gas. Testimony in the record, including that of petitioner's witnesses, indicates that natural gas prices may rise due to deregulation. This information would clearly be relevant to a consumer who, because of petitioner's advertisements of a cost advantage, may consider the expense of converting to natural gas from another energy source. Thus, it cannot be said that the disclaimer requirement is arbitrary, capricious or unsupported by the record.

The determination should be confirmed, and the petition dismissed, without costs.

KANE, CASEY, WEISS and LEVINE, JJ., concur.

Determination confirmed, and petition dismissed, without costs.