In the Matter of ADT COMPANY, INC., et al., Petitioners, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, May 7, 1987

### APPEARANCES OF COUNSEL

*Roland & Fogel (Keith J. Roland* of counsel), and *Boult, Cummings, Conners & Berry (Daniel R. Loftus* of counsel), of the Tennessee Bar, for petitioners.

*David E. Blabey (Margery F. Baker* of counsel), for Public Service Commission of the State of New York, respondent.

*John M. Clarke (Gerald M. Oscar* and *Paul H. Repp* of counsel), for New York Telephone Company, respondent.

### OPINION OF THE COURT

HARVEY, J.

In November 1984, respondent New York Telephone Company (hereinafter NYT), filed with respondent Public Service Commission (hereinafter the Commission) a request for an annual revenue increase of $775,000,000 for the rate year ending September 30, 1986. NYT later revised its request to $565,600,000. Extensive hearings followed in which petitioners, a group of security alarm companies, and many other

parties[1] intervened. Ultimately, the Commission granted NYT an over-all rate increase of $226,000,000. Petitioners do not challenge the over-all rate increase approved by the Commission. They do, however, challenge the proportion of the increase allocated to private line users.

Private line service is one of the various services offered by NYT. Private line service provides the customer with exclusive use of a telephone circuit from one point to another. Petitioners use private line circuits to maintain a connection between their customers' premises and a central station which monitors the circuits for signals indicating the presence of intruders. The private line service is distinct from other services offered by NYT, such as the basic service which provides the public with its access to the telephone network. It is noteworthy that the various services are not necessarily operated on a strict cost basis since a cost basis would, for example, sharply increase basic service and jeopardize public access. Simply stated, certain NYT services subsidize other services in an attempt not only to foster sound financial policy but also to support important public goals.

In attempting to allocate the over-all increase of $226,000,000, the Commission increased some rates, decreased some rates and left others untouched. Two types of increases were made by the Commission. Where specific circumstances warranted separate treatment, the increase was made accordingly. However, where no such specific circumstances were found to exist, a standard 8.3% increase was used. The 8.3% increase was applied to private line services, resulting in a $40,800,000 rate increase for that service.[2]

The central issue raised by petitioners is whether the Commission properly credited private line users with certain savings realized through the implementation of a computerized system of testing the performance of private line circuits

---

1. Intervening parties included, among others: United States Government and Department of Defense, City of New York, County of Suffolk, County of Rockland, GTE Sprint, MCI Telecommunications, AT&T Communications of New York, NYS Telecommunications Association, NYS Telephone Association, Aeronautical Radio, Inc., Greater New York Hospital Association and Hospital Association of New York State, The Consumer Coalition, Empire Association of Long Distance Telephone Companies, Committee of Corporate Telecommunications Users, New York Clearinghouse and Universal Service Alliance.

2. NYT had requested an $88,800,000 rate increase for private line services.

known as "SARTS".[3] Specifically, petitioners contend that "nontester" cost savings attributable to SARTS were not properly credited to private line users. Nontester personnel are individuals who devote only a portion of their time to private line activities. SARTS allows certain testing procedures to be accomplished without contacting nontester personnel, thus resulting in cost savings.

The Administrative Law Judges found that SARTS resulted in nontester cost savings of $56,800,000. The Commission, however, declined to accept these findings. The Commission found that allowing petitioners a $56,800,000 deduction would cause the illogical result that nontester and other maintenance expenses on private line services was less than zero. The Commission further held that any adjustment for nontester savings was at best speculative. Hence, the private line service category was included in the across-the-board 8.3% rate increase applicable to all services not subject to specific adjustment. Unhappy with this result, petitioners commenced this CPLR article 78 proceeding which has been transferred to this court pursuant to CPLR 7804 (g).

Petitioners contend that the Commission's reliance on an analysis performed by its senior advisers based upon data provided by NYT's workpapers was improper. It is undisputed that the Commission relied on this information in reaching its determination. Petitioners argue that the Commission's reliance on this analysis violated their due process rights since the analysis was not part of the record. We cannot agree.

The Commission is permitted to utilize its staff in exercising its independent judgment as to rate-making, which is essentially a legislative function (see, State Administrative Procedure Act § 307; *Matter of New York Tel. Co. v Public Serv. Commn.*, 64 AD2d 232, 238, *lv denied* 46 NY2d 710). The Commission was faced with contradictory arguments and evidence. It therefore exercised its independent analysis of

---

3. The acronym "SARTS" stands for "Switched Access Remote Testing System". SARTS is a computer facility that permits the monitoring of the performance of telephone circuits from a centralized and remote location. It was implemented approximately 10 years ago by NYT as a means of introducing cost efficiencies into the process of testing the performance of private line circuits. Without SARTS, if a private line circuit malfunctions, NYT maintenance employees must manually test each portion of that circuit to isolate the source of the trouble. SARTS permits a computer operator at a centralized location to isolate the breakdown so that repairs can then be made.

NYT's workpapers. The workpapers used in the analysis had been provided to petitioners and, indeed, petitioners had even offered some of them into evidence in support of their arguments. The fact that the Commission chose to conduct an independent analysis and arrived at a conclusion not suggested by the parties was not improper *(see, Matter of Brooklyn Union Gas Co. v Public Serv. Commn.,* 101 AD2d 453, 456; *Matter of New York Tel. Co. v Public Serv. Commn.,* 98 AD2d 535, 539).

Petitioners further contend that the Commission's rejection of the nontester SARTS saving adjustment of $56,800,000 was unreasonable and contrary to the Commission's precedent. It is the Commission's policy to allocate SARTS savings to the private line category. Thus, according to petitioners, if the savings exist they should be properly credited, and if they don't exist then the investment cost of SARTS should have been disallowed as an imprudent investment by NYT. The fact that the Commission rejected petitioners' proposed savings adjustment does not, however, mean that it did not believe that such savings existed, nor does it mean that it did not believe that such savings were not credited to private line users. The Commission was faced with conflicting data submitted by petitioners and NYT which was irreconcilable. Petitioners' evidence indicated that $56,800,000 in nontester SARTS savings had been realized and NYT's calculations arrived at a net nontesting maintenance expense of $52,000,000. The Commission recognized that to offset the two figures would suggest that NYT spent nothing on nontester maintenance. The Commission rejected this outcome as illogical. The Commission thus adopted the final position that the SARTS-related savings had already been accounted for in NYT's calculations. In this proceeding, NYT now agrees with this analysis by the Commission. We conclude that the Commission's resolution of the conflicting evidence, which involved technical matters within the Commission's expertise, was rational and thus should not be disturbed *(see, Matter of Rochester Gas & Elec. Corp. v Public Serv. Commn.,* 117 AD2d 156, 160; *Matter of New York Tel. Co. v Public Serv. Commn.,* 98 AD2d 535, 539, *supra).*

Petitioners also challenge the Commission's decision to subject private line users to the residual rate increase of 8.3%. The Commission can consider factors other than just cost when adjusting rates, so long as the rate design is rational *(see, e.g., Matter of New York State Council of Retail Merchants v Public Serv. Commn.,* 45 NY2d 661, 669; *Matter of*

*Dara Gardens Mgt. Corp. v State of New York Dept. of Pub. Serv.,* 97 AD2d 603). Here, the Commission found that an across-the-board increase was necessary to meet NYT's overall revenue requirements. If private line users were not included, the revenue would have had to come from some other users of NYT's services. The inclusion of petitioners in the residual increase category was consistent with the Commission's policy of pricing many service categories at slightly above cost as a means of subsidizing basic telephone exchange access costs and thus promoting the policy of universal service to the public. Further, the record indicates that the inclusion of private line users among the service categories to be increased was rational.

Petitioners' final assertion, that the Commission improperly shifted the burden of proof, is unsupported by the record and thus, we reject it *(see, Matter of Kessel v Public Serv. Commn.,* 123 AD2d 203, 205-206).

WEISS, J. P., MIKOLL and YESAWICH, JR., JJ., concur.

Determination confirmed, and petition dismissed, without costs.