In the Matter of ROCHESTER GAS AND ELECTRIC CORPORATION, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, December 30, 1987

## APPEARANCES OF COUNSEL

*Nixon, Hargrave, Devans & Doyle (Robert L. Daileader, Jr.,* and *Richard N. George* of counsel), for petitioner.

*Robert A. Simpson (Margery F. Baker* of counsel), for respondent.

## OPINION OF THE COURT

MAIN, J. P.

Petitioner is a corporation engaged in the business of fur-

nishing gas and electricity to customers in Monroe County and several neighboring counties. Respondent has, as one of its responsibilities, the task of insuring that petitioner's rates for the furnishing of these services are just and reasonable. On August 23, 1985, petitioner filed proposed tariff changes in its electric and gas rate schedules which were to become effective September 22, 1985. In turn, respondent suspended the effectiveness of the proposed rates up to and including July 19, 1986 pursuant to Public Service Law § 66 (12). Hearings were held and the Administrative Law Judge rendered his recommended decision, which was substantially modified by respondent. Petitioner challenged respondent's determination, thus presenting the following issues for our consideration in this CPLR article 78 proceeding. Petitioner first challenges respondent's denial of recovery as a current expense of all but $397,000 of a total predicted premium of $7,888,674 for directors and officers (hereinafter D&O) liability insurance and its requirement that the remaining portion be capitalized as a cost of constructing the Nine Mile Point No. 2 nuclear station (hereinafter Nine Mile).* Next, petitioner challenges the denial of recovery of a further $470,700 portion of its rate year D&O insurance premium cost based upon its conclusion that this provided retroactive and duplicative coverage applicable to years prior to the rate year. Lastly, petitioner challenges denial of the recovery of a $1,375,853 assessment levied by the Federal Energy Regulatory Commission (hereinafter FERC) as reimbursement for benefits inuring to petitioner's hydroelectric generating facilities from January 1, 1952 through December 31, 1985 as a result of the construction and operation of the Mount Morris Reservoir by the United States Army Corps of Engineers.

Prefatorily, it is appropriate that we take note of the relevant long- and well-established principles by which we must be guided. The Legislature has granted to respondent the very broadest of powers, and it is not too much to say that in this respect respondent is the alter ego of the Legislature (see, *Matter of Rochester Gas & Elec. Corp. v Public Serv.*

---

* Operating expenses that do not extend a physical asset's life or increase its value are expensed for recovery in the current rate year (see, 16 NYCRR part 172). Construction costs and other expenses relating to the creation of physical assets which are expected to produce benefits in future years are capitalized (see, 16 NYCRR 168.3). Because the $4.16 billion cap on recovery of Nine Mile costs had already been exceeded, the capitalized insurance costs were, in effect, disallowed.

*Commn.,* 117 AD2d 156, 160; *Matter of Campo Corp. v Feinberg,* 279 App Div 302, 305, *affd* 303 NY 995; *see also, Matter of International Ry. Co. v Public Serv. Commn.,* 226 NY 474). One of respondent's duties is to insure that the public receives utility services at charges that are " 'just and reasonable' " *(Matter of Consolidated Edison Co. v Public Serv. Commn.,* 66 NY2d 369, 372, *appeal dismissed* 475 US 1114, citing Public Service Law § 65 [1]). Fixing utility rates, including the separation of costs properly chargeable to ratepayers versus those chargeable to shareholders, presents "problems of a highly technical nature, the solutions to which in general have been left by the Legislature to the expertise of [respondent]" *(Matter of New York State Council of Retail Merchants v Public Serv. Commn.,* 45 NY2d 661, 672). Accordingly, Public Service Law § 72 empowers respondent to consider all factors "which in its judgment" are relevant "with due regard among other things to a reasonable average return upon capital actually expended". Respondent is free to entertain or ignore any particular factor or to assign whatever weight it deems appropriate *(Matter of Abrams v Public Serv. Commn.,* 67 NY2d 205, 212 [and cases cited therein]). Inasmuch as Public Service Law § 72 mandates only that the rates fixed by respondent be "just and reasonable" unless it is shown that respondent's judgment was exercised "without any rational basis or without any reasonable support in the record", its determination is not to be set aside *(Matter of New York State Council of Retail Merchants v Public Serv. Commn., supra,* at 672). In addition, in dealing with the interpretation of statutes and regulations, courts ordinarily defer to the agencies responsible for their administration, unless the agencies' determinations are irrational or arbitrary *(supra,* at 672; *Matter of Central Hudson Gas & Elec. Corp. v Public Serv. Commn.,* 108 AD2d 266, 269-270). With these principles in clear focus, we turn to the issues, which we address seriatim.

### CAPITALIZATION OF D&O LIABILITY INSURANCE COSTS

Petitioner contends that respondent's determination to capitalize its D&O insurance expenses was arbitrary and capricious because (1) there was no reasonable ground for concluding that the risk of liability due to construction cost overruns accounted for the premium increase; (2) respondent should not have compared petitioner to Consolidated Edison (hereinafter Con Ed) in setting allowable D&O premium costs; (3) respondent should not have reached a conclusion not suggested by

one of the parties; and (4) due to the settlement cap on petitioner's recovery of Nine Mile construction costs, the capitalization amounted to a confiscating disallowance.

■ In our view, petitioner has failed to demonstrate that it was irrational for respondent to conclude that the risks associated with the Nine Mile construction accounted for the bulk of petitioner's D&O increased insurance cost. The authorities relied upon by petitioner, *Central Hudson Gas & Elec. Corp.* ([1974] 14 PSC 1686, 1691-1692) and 1986 Opns Public Serv Commn (No. 86-1, at 57-59) are readily distinguishable because in the former, the expense allowed, which was Central Hudson Gas Department's share of $17,000, was miniscule compared to petitioner's premium, and in the latter, the four-fold increase allowed was far less than that sought here and was found to be similar to increases at companies not involved in nuclear construction, a finding conspicuously absent in the case at bar. Further support for respondent's conclusion is found in the fact that the premium cost of D&O insurance was significantly lower ($400,000 versus $8 million) for Con Ed, an electric and gas corporation which is not engaged in construction of a nuclear facility and which serves seven times as many customers and generates seven times as much revenue. Thus, respondent asserts that it was logical to assume that Con Ed's carriers did not cancel its policies and/or increase its premiums from $400,000 to $8 million for the reason that the former was the industry rate for D&O liability insurance absent special risks and that the disparity in premium costs was accounted for by risks associated with Nine Mile construction. Moreover, in notifying its carriers of potential liability under the policies being canceled, petitioner mentioned *only* its involvement in Nine Mile with its cost overruns and settlement negotiations. Thus, it was apparently petitioner's own view that Nine Mile was the primary source of potential D&O liability. It therefore appears that there was a sound and adequate basis for respondent to treat the drastic insurance cost increase as a capital cost and that its action was neither arbitrary nor irrational.

■ Respondent's comparison of Con Ed with petitioner's rates was rational and not impermissible, as petitioner suggests, and petitioner's reliance on *People ex rel. Judge v Public Serv. Commn.* (192 App Div 837) is misplaced. In *Judge,* this court did not hold that comparison of other utilities' operating costs was impermissible; rather, it annulled the determination specifically based on respondent's denial to the power suppli-

ers of an opportunity to show that the labor markets in the cities compared were representative and upon the lack of any basis for respondent's conclusion that the power supplier could have arranged for labor at equivalent costs, not on a general prohibition against such comparisons. Support for the permissibility of comparison is found in *Rochester Gas & Elec. Corp. v Public Serv. Commn.* (64 AD2d 345, 353, *affd* 51 NY2d 823, *appeal dismissed* 450 US 961), wherein this court upheld respondent's survey of gas and electric utilities to determine customary ranges for certain expenditures and set guidelines for policy purposes. Respondent specifically found that Con Ed carried D&O coverage at approximately the same level as that of petitioner, and its choice of Con Ed's premiums as a guide was generous when one considers that Con Ed, with seven times more annual revenue than petitioner, was a greater risk.

■ Petitioner next contends that respondent impermissibly reached a conclusion not suggested by one of the parties, thereby denying it the opportunity to refute the analysis upon which respondent relied. This court has recently held that respondent could exercise its independent judgment as to ratemaking, an essentially legislative function, by basing its analysis on data that was not part of the record and by arriving at conclusions that were not suggested by the parties *(Matter of ADT Co. v Public Serv. Commn.,* 128 AD2d 1, 4-5; *see, Matter of Brooklyn Union Gas Co. v Public Serv. Commn.,* 101 AD2d 453, 456; *Matter of New York Tel. Co. v Public Serv. Commn.,* 98 AD2d 535, 539).

■ Finally, petitioner contends that because of the settlement cap on petitioner's recovery of Nine Mile construction costs, capitalization of D&O liability insurance premiums resulted in a confiscatory disallowance and was irrational. In support of this proposition, petitioner relies on *Matter of New York Edison Co. v Maltbie* (244 App Div 685, *affd* 271 NY 103). That case is clearly distinguishable, for there, respondent was precluded from requiring a utility to record in its capital account a loss it had not incurred. At bar, respondent simply held that particular costs should be capitalized rather than expensed. Capitalization of D&O insurance costs was a well-supported and rational accounting decision, with or without the separate matter of a cap on recovery of nuclear project costs, and the inability to recover costs over $4.16 billion associated with the plant, including insurance premiums char-

acterized by respondent as construction costs, is one of the risks petitioner took when it agreed to the settlement cap.

## DENIAL OF PURPORTED RETROACTIVE D&O INSURANCE COSTS

■ In August 1985, petitioner's D&O insurance carrier canceled its coverage of petitioner, effective December 31, 1985. Petitioner then chose to exercise options available to it under the terminated policies that provided some protection for claims arising in 1986 but stemming from occurrences from 1982 to 1985. In addition, it purchased from its new carrier coverage for occurrences during the same period. Petitioner asserts that this latter coverage was not retroactive but was prospective inasmuch as it was insuring against claims being asserted against it in the future. Whether the coverage under the newer policy for prior occurrences be labeled retroactive or prospective, it was duplicative of existing coverage under prior policies. Moreover, while petitioner alludes to limitations under the canceled policies which necessitated broader coverage under the new insurance, it failed to specify what limitations justified the purchase of almost $500,000 in additional coverage. Accordingly, we conclude that petitioner has failed to demonstrate that respondent has abused its discretion in fulfilling a primary duty of separating costs to be borne by utility shareholders versus ratepayers *(see, Matter of Consolidated Edison Co. v Public Serv. Commn.,* 66 NY2d 369, 372, *supra).* Having so concluded, we need not address respondent's judicial estoppel argument.

## DENIAL OF DEFERMENT OF FERC ASSESSMENT

■ On this issue, petitioner argues that respondent's denial of deferral and subsequent recovery in rates of the $1.3 million FERC assessment against it in 1986 was inconsistent with respondent's treatment of refunds, was based upon an unfiled regulation and was in contravention of the principles of comity. Respondent has the authority to defer extraordinary and unanticipated material expenses to permit a utility to recoup shortfalls through increased rates, and it can also defer unexpected revenues to the benefit of ratepayers *(see,* 16 NYCRR 166.17). Respondent, in determining that deferral of the FERC assessment was unwarranted, was guided, to some extent, by its benchmark or reference point of 1% of net income; since the assessment was less than that amount, it was not found to be material. Petitioner contends that this

result was inconsistent with prior determinations, in that respondent has provided that refunds should flow directly to ratepayers even where the refunds amounted to less than 1% *(see, Rochester Gas & Elec. Corp.* [1984] 24 PSC 3645, 3696-3698). Respondent answers this argument in convincing fashion by pointing out that utility refunds are governed not only by the accounting methods in 16 NYCRR 166.17, which apply at bar, but also by Public Service Law § 113, which authorizes respondent to order that utility refunds be passed on to ratepayers.

Citing to *Matter of Cabrini Med. Center v Axelrod* (105 AD2d 569), petitioner next contends that respondent's use of the 1% guideline for determining the materiality of the FERC costs was improper as violative of NY Constitution, article IV, § 8 and State Administrative Procedure Act § 203 (1) since no such rule was filed with the Secretary of State. Unlike the situation in *Cabrini,* where a fixed percentage of occupancy was used, the 1% at bar was a guideline or reference point and not a fixed and inflexible rule. The use of the guideline by respondent is analogous to the situation in *Matter of Roman Catholic Diocese v New York State Dept. of Health* (66 NY2d 948), wherein the use of a percentage guideline was found not to be a regulation that had to be filed because it was not applied as the determinative basis but, instead, as in the case at bar, was merely a nonbinding guide which was weighed along with other factors.

Lastly, we are unable to conclude that the comity doctrine is applicable to the factual situation presented here.

Accordingly, respondent's determination should be confirmed in all respects and the petition dismissed.

WEISS, MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Determination confirmed, and petition dismissed, without costs.