In the Matter of MULTIPLE INTERVENORS, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, February 15, 1990

*Couch, White, Brenner, Howard & Feigenbaum (Algird F. White, Jr.,* of counsel), for petitioner.

*William J. Cowan (Jonathan D. Feinberg* of counsel), for respondent.

## OPINION OF THE COURT

LEVINE, J.

In August 1987, National Fuel Gas Distribution Corporation (hereinafter NFG) filed proposed tariff revisions with respondent in order to increase its annual revenue by $34.7 million (7.3%). In its rate design, NFG proposed to allocate the increase by raising residential rates by $41.9 million and *decreasing* the rates of its large-volume general service and large-volume transportation (i.e., transmission of customer-owned gas from local producers over NFG pipelines) customers

by $7.2 million. NFG also proposed to reduce the ceiling on its service class (hereinafter S.C.) 13 transportation rate charged to large-volume transportation customers. The S.C. 13 rate is flexible; previously its range was fixed at a minimum of $.10/Mcf and a ceiling of $.60/Mcf. NFG proposed to reduce the ceiling to $.4159/Mcf. Petitioner, an association of large-volume industrial users of natural gas, including customers of NFG, intervened and participated in the proceeding.

At the hearing before the Administrative Law Judge (hereinafter ALJ) which followed, NFG submitted a revised "embedded cost-of-service study" to support its proposed allocation of revenues as between residential and large-volume customers. An embedded cost-of-service study assigns items of plant cost to customer classes and then determines the percentage return from existing rates on the plant investment for each class. The study indicated that the systemwide average rate of return under existing rates was 5.95%, the large-volume customers' average rate of return was 27.74% and the residential customers' rate of return was 2.83%. Thus, from the findings of the study, NFG claimed that large-volume customers were disproportionately subsidizing residential customers. NFG also introduced evidence that the subsidy had to be eliminated because of competitive market conditions for large-volume customers, in that the discriminatory rates encouraged large-volume customers to leave its system in favor of alternative energy sources and suppliers. Respondent's trial staff opposed, submitting evidence supporting a rate design in which large-volume customers' rates would remain the same and residential rates would be increased. Staff also opposed lowering the S.C. 13 transportation charge ceiling and recommended that it be increased to $1.33/Mcf.

In the ALJ's recommended decision, NFG was granted a $19.246 million revenue increase. The ALJ also accepted NFG's position that the subsidy of residential customers be eliminated and, accordingly, followed NFG's allocation of revenue formula. The ALJ also adopted NFG's proposal to reduce the S.C. 13 transportation rate ceiling.

Upon respondent's review of the ALJ's recommended decision, it elected to accept neither his revenue allocation nor the total recommended revenue increase. Instead, respondent adopted the allocation of revenue recommended by its trial staff, and reduced the revenue increase to $14.899 million. Respondent determined that the S.C. 13 transportation charge ceiling should remain unchanged.

■ In this CPLR article 78 proceeding, only petitioner seeks review of respondent's revenue allocation and S.C. 13 transportation charge ceiling determinations. Petitioner's primary point on review is that respondent's rejection of NFG's allocation of revenue proposal for eliminating the unreasonably large subsidy to residential customers under the then existing rate design lacked substantial evidence, in that it totally disregarded uncontested evidence that competitive market conditions for the energy needs for large-volume customers dictate removal of any subsidy. We disagree. First, there was evidence in the record, in the form of qualified expert opinion, attacking the validity of the conclusions of NFG's cost-of-service study as to the extent of the "subsidy" of residential customers at the expense of large-volume consumers of NFG's product and services. Additionally, the findings of the cost-of-service study submitted by NFG in this proceeding were inconsistent with a similar study submitted by NFG in a recently concluded previous proceeding, in which the difference in respective contributions to systemwide average rate of return of residential and large-volume customers was significantly smaller. Thus, respondent had ample evidentiary support in the record for discounting NFG's and petitioner's claims on the extent of the subsidy. Second, despite there being language in respondent's decision which can be read to the contrary, the decision on allocation as a whole unambiguously shows that respondent not only considered but took into account competitive market conditions in arriving at its own allocation formula. In adopting the recommendation of respondent's trial staff on the proper allocation of the revenue increase as between residential and large-volume ratepayers, respondent clearly accepted the rationale for the trial staff's position, described in the opinion itself, "that concerns about the marketability of gas to large volume users can be satisfied simply by allocating no portion of the increase to them". Respondent simply discounted NFG's opinion evidence on the severity of competition from alternative energy sources and suppliers and NFG's need at present to reduce large-volume user rates to "generate the maximum aggregate contribution" from that class of customers. Respondent further reserved to NFG the right in the future to demonstrate that market conditions might necessitate a reduction in large-volume rates.

■ In determining rate design, as in other ratemaking decisions, respondent's expertise requires judicial deference to the weight the agency assigns to any given factor in the

evidence before it *(Matter of Rochester Gas & Elec. Corp. v Public Serv. Commn.,* 135 AD2d 4, 8, *appeal dismissed* 72 NY2d 840; *Matter of Tele/Resources v Public Serv. Commn.,* 58 AD2d 406, 410, *lv denied* 43 NY2d 647), and we find nothing irrational in respondent's treatment of market factors here. The fact of the matter is that competitive market conditions for large-volume users formed the primary basis for respondent's rejection of the contention of the State Consumer Protection Board that all customer classes should have rate increases proportionate to the increase in revenues granted to NFG and respondent's determination that large-volume rates should remain the same. Nor does the record as a whole confirm petitioner's claim that respondent's trial staff recommendation, upon which respondent relied, was based solely on a value-of-service principle of rate design under which rates will be set higher for classes of customers whose patronage is not subject to elasticity of demand. The trial staff's recommendation was clearly based upon a multiplicity of factors.

■ Petitioner's remaining argument for upsetting respondent's allocation of NFG's revenue increase is that respondent, by its own admission, adopted a rate formula giving preferential treatment to one class of customers over other classes, in violation of statutory law (citing Public Service Law § 65 [1], [3]). Again, we disagree. In its brief, respondent asserted and cited to evidence that, in fact, the fixed rates of large-volume customers are lower than those charged residential customers, and petitioner left this assertion undenied. Thus, petitioner's claim of discrimination is necessarily based upon a cost-of-service allocation of plant cost to customer classes. While, concededly, the over-all allocation of NFG revenues is, thus, favorable to residential users on a cost basis, this is not necessarily violative of statutory law. Respondent can validly set differential rates based upon considerations other than cost, as long as they are otherwise rationally based *(see, Matter of New York State Council of Retail Merchants v Public Serv. Commn.,* 45 NY2d 661, 669; *Matter of MCI Telecommunications Corp. v Public Serv. Commn.,* 108 AD2d 289, 295). Here, respondent could rationally base its refusal to abruptly eliminate entirely all cost-based differential treatment between residential and large-volume customers in favor of a more gradual approach because of the impact on residential users, their lesser ability to effectively reduce gas usage by conservation methods or to resort to less expensive energy sources or suppliers, and the unavailability of a tax deduction

to them to mitigate increased gas costs *(see, Matter of New York State Council of Retail Merchants v Public Serv. Commn., supra,* at 669-670; *Matter of Dara Gardens Mgt. Corp. v State of New York Dept. of Pub. Serv.,* 97 AD2d 603, 604).

Finally, as respondent's refusal to either reduce or increase the S.C. 13 transportation charge ceiling is completely consistent with its decision on revenue increase allocation, it, too, was rationally based. For all the foregoing reasons, respondent's determination should be upheld in all respects.

CASEY, J. P., WEISS, MERCURE and HARVEY, JJ., concur.

Determination confirmed, and petition dismissed, without costs.