OPINION OF THE COURT
Louis C. Benza, J.
Petitioner has commenced a CPLR article 78 proceeding challenging several orders of the Public Service Commission which implemented a number of tax law amendments passed in the year 2000 (L 2000, ch 63, part Y). The instant proceeding arises out of the ongoing process of moving from monopolistic vertically-integrated utilities owning substantially all of the electricity generating facilities and transmission and distribution facilities, and natural gas companies selling both gas and transmission and distribution, to a competitive market-based supply of energy with generating facilities and gas production facilities in separate private ownership and the formerly vertically-integrated utilities becoming primarily suppliers of transmission and distribution services. As stated in the Governor’s Memorandum in Support of the year 2000 Tax Law amendments, the prior state and local tax system was designed to function within the context of an industry structure of vertically-integrated utilities which no longer exists. It was determined that the former tax system would produce unintended results including competitive disadvantages for New York based energy providers. Under the new tax measures, section 186 of the Tax Law, which imposed a 0.75% franchise gross receipts tax (GRT) on all revenues earned by gas or electric corporations, was repealed. In addition, gross receipts taxes on transmission and distribution income, and all other income consisting primarily of commodity income, imposed by section 186-a of the Tax Law, were either phased out or phased *87 down. The reductions in gross receipts taxes were offset by the imposition of state income tax on the utilities. Petitioner contends that the Public Service Commission orders challenged herein authorized New York State utilities to continue to collect such gross receipts taxes in the full amount of their prior levels, notwithstanding the fact that some of the taxes have been repealed and others have been reduced.
The petition contains three causes of action alleging that the year 2000 Tax Law amendments are clear and unequivocal with respect to the repeal and phase down of gross receipts taxes and implementation of a tax credit known as the industrial and manufacturing business credit (hereinafter IMB credit). Petitioner contends that nothing in the statute authorizes the collection of a repealed tax or taxes at higher than the statutory rates. Petitioner contends that the March 13, 2002 order and prior orders violate the plain and unambiguous meaning of the 2000 Tax Law amendments by authorizing collection of franchise gross receipts taxes, which have been repealed, and commodity and transmission and distribution gross receipts taxes, which have been phased out and/or down, at levels higher than the statutory rates. Petitioner also contends that its members have been deprived of the benefits of the IMB credits and other benefits of the tax amendments, and that therefore the orders are arbitrary and capricious.
The second cause of action alleges that the March 13, 2002 order, and prior orders upon which it is based, exceed the delegated authority to set just and reasonable rates and constitute lawmaking in violation of the separation of powers doctrine of the New York State Constitution, and further that authorization to collect repealed and excessive gross receipts taxes is inconsistent with the statute. The third cause of action alleges that the IMB credits are limited to statutory rates, and that the utilities have over collected and retained funds in their deferral accounts in excess of such statutory rates. Petitioner contends that its members are entitled to a full refund of all gross receipts tax payments in excess of the statutory rates.
The petition also alleges at paragraph 13, “[I]mportantly, the GRT taxes are directly passed through to consumers on their bills as a separate charge. The net income tax on utilities, however, is not a separate surcharge but, instead, is a part of a utility’s cost structure that must be recovered through Commission-approved rates.” The petition at paragraph 18 alleges that the respondent’s orders authorized utilities to collect *88 the repealed franchise GRT and the reduced commodity GRT and transmission and distribution GRT at prior levels which exceed current tax rates, and further at paragraph 20 alleges that the orders authorized utilities to bill customers as if no changes to the GRT had been enacted. The petition also alleges that the tax deferral plan denies petitioner’s members of the intended benefit of the IMB credit.
Respondent by answer has raised an objection that petitioner has failed to join indispensable parties, and further that since the statute of limitations has run with respect to any such joinder, the action must be dismissed. Respondent contends that all New York State utilities are necessary and indispensable parties on the ground that they would be inequitably affected by a judgment in this proceeding, which would require the utilities to issue refunds of over-collected gross receipts taxes.
CPLR 1001 (b) lists the factors which must be considered in determining whether to allow an action to proceed without a party who should have been joined. The first consideration is whether the plaintiff has another effective remedy in case the action is dismissed on account of the nonjoinder. In the instant proceeding, petitioner would have no other effective remedy whatsoever. The second consideration is the prejudice which may accrue from the nonjoinder to the respondent or to the person not joined. In the instant proceeding, it appears that the Public Service Commission and the New York State utilities have exactly the same interests vis-a-vis petitioner’s objections. During the comment period before the orders, petitioner was the only one who raised objections to the manner of collecting the newly imposed income tax on New York State utilities. Moreover, the court finds that the respondent has vigorously litigated and raised substantially all relevant issues in defense of the proceeding. As such, it does not appear that there would be any actual prejudice accruing from nonjoinder of all New York State utilities. The third and fourth considerations involve avoidance or mitigation of any prejudice. It is unlikely that any significant prejudice or inequity would befall the New York State utilities as any order for refund of over-collected gross receipts taxes could be fashioned by the Public Service Commission to protect the interests of the utilities and their investors. With respect to the fifth consideration, it appears that since the instant proceeding challenges only a Public Service Commission order, an effective judgment may be rendered in the absence of the utilities. Given the unity of *89 interests of the utilities and the Public Service Commission with respect to the issues involved herein and the ability to provide protective provisions in any subsequent Public Service Commission order, the court finds that the proceeding may go ahead without joinder of the utilities (see Saratoga County Chamber of Commerce v Pataki, 275 AD2d 145, 151-154).
The standard of review of Public Service Commission rate determinations is limited and is one of great flexibility. Determinations of the Public Service Commission are entitled to judicial deference and will not be set aside unless they are without any rational basis or reasonable support in the record. The Public Service Commission may consider or ignore any specific factor and give whatever weight to the various considerations that it deems appropriate (Matter of New York Tel. Co. v Public Serv. Commn. of State of N.Y., 95 NY2d 40, 48; see also Matter of Owners Comm. on Elec. Rates v Public Serv. Commn. of State of N.Y., 194 AD2d 77; Matter of Multiple Intervenors v Public Serv. Commn. of State of N.Y., 154 AD2d 76). A rate need not be based upon the cost of service (Matter of Multiple Intervenors v Public Serv. Commn. of State of N.Y., 154 AD2d 76, supra; Matter of ADT Co. v Public Serv. Commn. of State of N.Y., 128 AD2d 1; see also Matter of Lefkowitz v Public Serv. Commn., 40 NY2d 1047, mod 42 NY2d 998). In addition, the Public Service Commission is authorized to consider the economic impact of rates upon different classifications of rate payers (Matter of New York State Council of Retail Merchants v Public Serv. Commn. of State of N.Y., 45 NY2d 661, 670; Matter of Owners Comm. on Elec. Rates v Public Serv. Commn. of State of N.Y., 194 AD2d 77, supra; Matter of Cohalan v Gioia, 88 AD2d 722; Matter of Legislature of County of Rockland v New York State Pub. Serv. Commn., 49 AD2d 484). Thus, under appropriate circumstances, rates may be set to mitigate harsh impacts even though they amount to a subsidization of one classification of rate payer by another (Matter of Multiple Intervenors v Public Serv. Commn. of State of N.Y., 154 AD2d 76, supra; Matter of ADT Co. v Public Serv. Commn. of State of N.Y., 128 AD2d 1, supra; Matter of Legislature of County of Rockland v New York State Pub. Serv. Commn., 49 AD2d 484, supra). The courts have also allowed the Public Service Commission to proceed thoughtfully and step-by-step when confronted with novel rate issues in order to avoid any abrupt or untoward consequences (Matter of New York State Council of Retail Merchants v Public Serv. Commn. of State of N.Y., 45 NY2d 661, 666-674, supra). It has also been *90 held proper for the Public Service Commission to authorize refunds of overpayments by lowering future rates rather than directing refunds of the exact dollar amounts to the customers who actually paid (Matter of Multiple Intervenors v Public Serv. Commn. of State of N.Y., Sup Ct, Albany County, Apr. 30, 1986, Williams, J., affd 129 AJD2d 846). It has further been held that the Public Service Commission has the discretion to set rates in its own manner absent clear and unequivocal statutory language directing a particular result (Matter of Long Lake Energy Corp. v Public Serv. Commn. of State of N.Y., 148 AD2d 84).
A review of the petition indicates that it is based upon a fundamental misapprehension of the nature of the former gross receipts tax surcharges, and further that it misquotes and misconstrues the Public Service Commission orders challenged herein. As stated above, the petition alleges that gross receipts taxes are directly passed through to the customers on their bills as a separate charge, and that net income tax on utilities is not a separate surcharge, but instead is a part of a utility’s cost structure that must be recovered through Commission approved rates. Such allegations are in error. Prior to the 2000 tax amendments, subdivision (6) of section 186-a of the Tax Law provided “the tax imposed by this section shall be charged against and be paid by the utility and shall not be added as a separate item to bills rendered by the utility to customers or others, but shall constitute a part of the operating costs of such utility.” Thus, “while the economic burden of the gross receipts tax * * * falls on the consumer, New York’s gross receipts tax statutes explicitly impose the legal incidence of the gross tax receipts on the utilities * * * and the PSC’s approval of the pass-through surcharges is merely permissible” (Matter of Brooklyn Union Gas Co. v Commissioner of Taxation & Fin., 255 AD2d 80, 86). “Instead of a separately billed item charged to customers, petitioner recovers, among other costs, its gross receipts tax assessment through a revenue tax surcharge, which is an element of its PSC tariff’ (id. at 82; see also Tennessee Gas Pipeline Co. v Urbach, 96 NY2d 124). The nature of the gross receipts tax is also evidenced by the fact that the billing rate for the gross receipts tax surcharge actually exceeds the gross receipts tax rate. This is because the gross receipts tax surcharge itself constitutes revenue of the utility and is also subject to the gross receipts tax.
Thus, contrary to petitioner’s contentions, the gross receipts taxes are not directly passed through to the customers *91 on their bills as a separate charge. Rather, the gross receipts taxes are in fact a part of a utility’s cost structure that is recovered through Commission approved rates. In the original order of the Public Service Commission issued December 21, 2000, which started implementation of the 2000 tax amendments, the Public Service Commission indicated that it authorized collection of the gross receipts taxes through a surcharge instead of base rates because of the regular changes in the tax rates over the last two decades. Such method was based upon the Commission’s discretion in determining rates and the relative ease of changing surcharge rates, and was not required by any provisions of the Tax Law. It is therefore determined that petitioner’s initial premise concerning the nature of the gross receipts tax surcharge is erroneous.
Petitioner also contends that the Public Service Commission orders authorized collection of gross receipts taxes which have been repealed or statutorily reduced. In fact, neither the original December 21, 2000 order nor any of the subsequent orders does any such thing. The December 21, 2000 order provides, inter alia, “we are requiring companies to use surcharge tariffs to recover gross revenue taxes. The companies should also use such tariffs temporarily to collect the state income tax, until this tax liability is incorporated into base rates at a later date. Companies should continue to collect gross revenue taxes through a surcharge tariff at the then currently effective statutory rate.” (Order at 8.) It is thus clear that the Commission order only authorized collection of the continuing section 186-a transmission and distribution and commodity gross receipts taxes at the currently effective statutory rate. The order also expressly authorized and required a separate and distinct surcharge for state income tax. The separate surcharge to cover the newly imposed income tax was limited so that the full amount of the gross receipts tax surcharge and income tax surcharge could not exceed the amount of the prior gross receipts tax surcharge. The Public Service Commission orders make it expressly clear that this was done in order to prevent a short term increase in utility rates for utilities who would experience an increase in the total tax burden caused by imposition of the income tax before the full reduction in gross receipts taxes became effective due to the phase down and/or phase out. The Commission orders further required an annual reconciliation of income tax surcharge amounts, with under collections to be deferred until paid off by the reductions in gross receipts taxes, and over collections to be refunded by reductions in rates for *92 the next rate year. The Commission orders also explicitly contemplated full utility base rate proceedings once the effects of the Tax Law changes had stabilized.
It therefore appears that the temporary income tax surcharge actually provides the benefits of the year 2000 tax amendments as realized, with minimal delay of at most one year. Moreover, a review of the reconciliations submitted as part of respondent’s return shows that the amount of the surcharges have been reasonably related to the amount of income tax due as many of the utilities have experienced under collections. In any event, any over collections are subject to payment of interest at what appears to be above market rates, thereby creating a significant incentive for the utilities to estimate correctly their income tax surcharges. It therefore appears that the Public Service Commission orders are not in direct conflict with any terms of the tax amendment, and that the manner of imposing an income tax surcharge is a reasonable method of allowing the utilities recovery of income tax expenses, especially given the changing impacts of the full tax structure over the next few years, billing complexities, and the time and administrative expense involved in full base rate proceedings for all utilities within the state.
The court also finds that petitioners have in fact received the full benefit of their IMB credit. The statute granting the IMB credit expresses no intent whatsoever to give industrial and manufacturing businesses any further credit for utilities’ state income tax expenses, nor is there any indication that industrial and manufacturing businesses should be treated by the Public Service Commission as a separate and distinct classification to be granted preferential treatment in addition to the immediate benefit provided by the IMB credit.
It is therefore determined that the petition fails to state facts upon which any relief may be granted. Accordingly, the instant article 78 proceeding is hereby dismissed.